IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN RE:<br>RICHMOND CHRISTIAN CENTER,<br><br>Debtor. | Bankruptcy Case<br>No.: 13-36312-KLP<br>Chapter 11 |

## MOTION TO DISMISS OR CONVERT

Foundation Capital Resources, Inc. ("**Foundation Capital**"), by counsel and pursuant to 11 U.S.C. § 1112(b)(1), (3) and (4), Rules 1017(f) and 9014 of the Federal Rules of Bankruptcy Procedure, files this motion to dismiss or convert ("**Motion**"). In this Motion, Foundation Capital moves the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division ("**Bankruptcy Court**"), to enter an order dismissing or converting the Case (as this term is defined in paragraph 3). In support of this Motion, Foundation Capital states as follows:

## INTRODUCTION

Richmond Christian Center has filed two bankruptcy cases for the sole purpose of preventing Foundation Capital from enforcing its contractual and state court remedies against Richmond Christian Center's property. The first case was dismissed because Richmond Christian Center failed to perform any of its statutory duties.

In this Case, Richmond Christian Center has continued this pattern of failing to perform its statutory duties. In addition, it has, and continues to, abuse the privilege afforded it by the Bankruptcy Code by, among other things, paying excessive amounts to, or for the benefit of, Pastor Parson and his son and by failing to reorganize in a timely fashion.

Paul K. Campsen, Esq. (VSB No. 18133)
Dennis T. Lewandowski, Esq. (VSB No. 22232)
Kaufman & Canoles, a professional corporation
150 West Main Street, Suite 2100
Norfolk, VA 23510
(757) 624-3000 – Telephone
(757) 624-3169 – Facsimile
*Counsel for Foundation Capital Resources, Inc.*

Cause exists under 11 U.S.C. § 1112(b) to convert or dismiss the Case and it is in the best interest of the creditors to do so. The conversion of the case to a Chapter 7 case is appropriate in order to preserve the pending avoidance action against an insider and to control the sale of Richmond Christian Center's real estate. Conversely, dismissal of the Case would jeopardize the creditors' ability to recover the property that is the subject of the pending avoidance action.

## JURISDICTION AND VENUE

1. This is a contested matter brought in the Case pursuant to 11 U.S.C. § 1112(b)(1), (3) and (4). Therefore, it is core proceedings as defined in 28 U.S.C. § 157(b)(2)(A). The Bankruptcy Court has jurisdiction pursuant to 28 U.S.C. § 1334.

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## PARTIES

3. On November 22, 2013, Richmond Christian Center, an unincorporated association ("**Debtor**"), filed in the Bankruptcy Court a voluntary Chapter 11 petition as case number 13-36312-KLP ("**Case**"), at which time an order for relief was entered. The Debtor is now, and at all times relevant to the Case has been, operating as the debtor-in-possession and has retained possession of its estate pursuant to 11 U.S.C. §§ 1107(a) and 1108.

4. Foundation Capital is now, and at all times relevant to this Case has been, a secured creditor of the Debtor and a party in interest within the meaning of 11 U.S.C. § 1112(b).

## FACTS

A. **The Loan and the default.**

5. On or about September 23, 2005, Foundation Capital agreed to make a loan to the Debtor in the aggregate principal amount of Four Million Four Hundred Thousand and 00/100 Dollars ($4,400,000.00). The loan is evidenced by an adjustable rate secured note ("**Note**") dated

2

September 23, 2005 in the original principal amount of Four Million Four Hundred Thousand and 00/100 Dollars ($4,400,000.00) made, executed and delivered by Debtor, through the Trustees, payable to the order of Foundation Capital. A copy of the Note is attached as **Exhibit 1**.

6.  The Debtor's obligations under the Note are secured by a deed of trust, assignment of leases and rents and security agreement ("**Deed of Trust**") from Steven A. Parson, James W. Middleton and Henry Fenner, trustees for the Debtor, as grantor, to Hamill D. Jones, Jr., as trustee, effective as of September 23, 2005. The Deed of Trust is recorded in the Clerk's Office of the Circuit Court of the City of Richmond as Instrument No. 05-032939. It created a properly perfected lien on the real property and improvements described on Schedule A to the Deed of Trust (collectively, the "**Liened Property**"). A copy of the Deed of trust is attached as **Exhibit 2**.

7.  The last payment on the Note was received by Foundation Capital on or about August 26, 2013, which payment was applied to the scheduled payment due on August 23, 2011. Interest has continued to accrue under the Note from August 23, 2011.

8.  As a result of the payment default under the Note and Deed of Trust, Foundation Capital scheduled a foreclosure sale of the Liened Property for September 25, 2013 at 10:00 a.m.

9.  To stop the foreclosure sale, the Debtor filed a voluntary Chapter 11 bankruptcy petition on September 24, 2013 as Case No. 13-35141-KRH ("**First Bankruptcy Case**"). Thereafter, the Debtor failed to timely file its schedules and statement of financial affairs and the First Bankruptcy Case was dismissed on October 24, 2013.

10.  Foundation Capital scheduled a second foreclosure sale of the Liened Property for November 22, 2013 at 10:00 a.m.

3

11. To stop the second foreclosure sale, the Debtor filed the Case on November 22, 2013 at 9:54 a.m.

**B.  The Debtor's Assets and Liabilities.**

12. The Debtor owns a significant amount of real estate in the City of Richmond, Virginia. According to the Schedules filed by the Debtor, as ECF Docket No. 20 -- Schedule A, the Debtor owns sixteen parcels of land (collectively, the "**Real Property**") on the Southside of Richmond along Cowardin Avenue.

13. The Real Property consists of a cluster of buildings and several unimproved parcels that are used for parking. An aerial photograph of the Real Property, outlined in black, is attached as **Exhibit 3**. Exhibit 3 also identifies the various buildings on the Real Property and the location of the parking areas.

14. Of the sixteen parcels that make up the Real Property, four parcels are subject to a lien in favor of Foundation Capital and are identified above as the Liened Property. The Liened Property are the parcels bounded by Cowardin Avenue on the north, Wall Street on the east, 19th Street on the south and Perry Street on the west. The fellowship hall, banquet hall, two small office buildings and a small parking lot are located within this block.

15. The remaining twelve parcels of the Real Property are not encumbered by the Deed of Trust (collectively, the "**Unencumbered Parcels**"). The Unencumbered Parcels contain two parking areas, an auto shop, gym and office building.

16. Prior to filing the Case, the Debtor owned seventeen other parcels of land (collectively, the "**Transferred Parcels**") adjacent to the Real Property. The Transferred Parcels are to the west of the Real Property, fronting on Cowardin Avenue. The Real Property and the

Transferred Parcels are separated by Perry Street. An aerial photograph of the Transferred Parcels is attached as **Exhibit 4**.

17. As more fully explained below, the Transferred Parcels were transferred by the Debtor, without consideration, to an entity controlled by Steven A. Parson Jr. ("**Parson, Jr.**"), in December of 2011, less than two years prior to the Debtor filing the Case. Parson, Jr. is the son of Steven A. Parson, Sr. ("**Pastor Parson**"), who is the pastor and designated representative of the Debtor. Therefore, Parson, Jr. is an "insider" of the Debtor as this is defined in 11 U.S.C. § 101 (31).

18. The Debtor's other assets are minimal. On Schedule B, ECF Docket No. 20, the Debtor states that the total value of its personal property is $66,600. Of this amount, $56,000 is represented by two late model BMW luxury automobiles that Pastor Parson and another of Pastor Parson's son drive.[1] The son reportedly is a contract employee of the Debtor earning $200.00 per week, plus the use of the late model BMW.

19. The Debtor's primary creditor is Foundation Capital, to which the Debtor owes more than $2,000,000. The Debtor also owes approximately $80,000 in priority claims, which are primarily unpaid real estate and payroll taxes. Finally, the Debtor owes approximately $94,000 to seventeen unsecured creditors.

20. In the First Bankruptcy Case, the Debtor utterly failed to perform any of its statutory duties. Although the First Bankruptcy Case was dismissed, it served the Debtor's purpose of stopping the first foreclosure sale and effectively gave the Debtor a 60-day reprieve.

---

[1] Interestingly, the Debtor operates a church on the Real Property. Yet, the Debtor reports that it only owns telephones and computers valued at $800, chairs valued at $800 and a sound system valued at $8,000. No office or church furniture is listed on the schedules. The Real Property also includes a gymnasium and car repair facilities, which at one time included car lifts and tools. On information and belief, the Debtor owned a piano, musical equipment and instruments, kitchen equipment, wood working equipment and auto lifts. These valuable items inexplicably are missing from the schedules.

Unfortunately, Foundation Capital suffered from the Debtor's actions and subsequent inaction because it incurred substantial fees and expenses in the first foreclosure.

C. **The Debtor's Failures or Inappropriate Actions in the Case**.

21. Acting through Pastor Parson in the Case, the Debtor has not performed significantly better than in the First Bankruptcy Case. The Debtor has consistently either failed to act or has acted inappropriately.

22. Although the Debtor has filed its schedules and statement of financial affairs, they are inaccurate and incomplete in many substantial respects.

23. It was approximately two months into the Case before the Debtor filed a motion to employ its counsel (ECF Docket No. 32). An order authorizing employment of counsel was not entered until April 23, 2014 (ECF Docket No. 47), approximately five months after the Case was filed.

24. The Debtor repeatedly has stated that the purpose of the bankruptcy and its "plan" is to liquidate its assets and pay its creditors. Yet, even though its primary asset is the Real Property, the Debtor did not filed a motion to employ a real estate broker until April 18, 2014 (ECF Docket No. 45), approximately five months after the Case was filed. On the date this Motion was filed, an order had not been entered employing the broker.

25. In addition, the Debtor has paid Charles Cochran approximately $5,000.00 since the filing the Case for "contract services". These payments have not been approved by the Bankruptcy Court. Mr. Cochran is an employee of the proposed real estate broker that the Bankruptcy Court has yet to approve. Moreover, the real estate broker is to be paid on a commission basis and not on a contract basis. The Debtor has not explained the reasons for the payments to, or recovered all of the payments from, Mr. Cochran.

26. In spite of this, while the Debtor reports it has "retained" a broker who is marketing the Real Property, the Debtor and broker have not been responsive to a party who has submitted a contract to buy the Real Property prior to the filing of the First Bankruptcy Case.

27. The Debtor has been urged repeatedly by Foundation Capital to negotiate the sale of the Real Property with this interested party, but has failed to do so.

28. The Debtor's excuse has been that it is unwilling to negotiate the sale until it discovers the amount of Foundation Capital's secured debt or that a prior listing agreement is in dispute and remains unresolved. However, Foundation Capital has filed a proof of claim that sets forth in detail the amount and basis of Foundation Capital's claim. Furthermore, as is commonly done, even if there was a genuine dispute as to the amount due Foundation Capital, any liens against the Real Property could be transferred to the sales proceeds until the validity, amount, and priority of such lien is established and the entitlement to the commission from the disputed listing agreement can be determined.

29. In January of 2014, the Debtor apparently employed a Charles Cochran and Rhonda Benson to act as its "attorneys-in-fact" to research and gather financial documentation relating to the Debtor's relationship with Foundation Capital. Yet, a motion to authorize this engagement has not been filed and an order authorizing their employment has not been entered. The Debtor's very need to employ a professional to obtain documents it should already have in its possession calls into question the competence of the Debtor's current management. A copy of a Resolution of Board of Trustees of the Debtor referencing a power of attorney agreement whereby this engagement was approved is attached as **Exhibit 5**.

30. Pursuant to the monthly operating reports, during the seven month pendency of the Case[2] the Debtor had paid Pastor Parson over $70,000 in compensation and benefits through May 31, 2014. Included in this amount is payment for a BMW luxury automobile, which he is supposed to have been paying the purchase price. The Debtor is paying over $600 each month for this vehicle.

31. Pursuant to the monthly operating reports, during the pendency of the Case the Debtor has paid for a BMW luxury automobile being operated by Pastor Parson's son, who is a contract employee of the Debtor earning $200.00 per week. The Debtor is paying over $600 each month for the vehicle.

32. Pursuant to the monthly operating reports, during the pendency of the Case the Debtor has paid for the insurance for the two BMW vehicles.

33. Prior to filing the Case, the Debtor paid over $1,200 each month for Pastor Parson and his son to each drive a late model BMW luxury automobile. During this period, the Debtor did not pay: (a) FICA taxes for its employees due to the Internal Revenue Service, which total $35,513.94 and cover the calendar years 2012 and 2013: (b) amounts due to the City of Richmond, Department of Utilities, which total $27,601.82; (c) amounts due to the City of Richmond, which total $76,198.76 for taxes; and (d) amounts due to the Commonwealth of Virginia, Department of Taxation for unpaid employee withholding taxes totaling $1,189.42. Attached as **Exhibit 6**, **Exhibit 7**, **Exhibit 8** and **Exhibit 9** are the proofs of claim filed by each entity mentioned above.

34. Also, Foundation Capital has been informed that, shortly prior to the filing of the Case, certain personal property of the Debtor was disposed of. No such disposition has been

---

[2] Although the Case has been pending longer than seven months, the Debtor has filed only seven monthly operating reports. The last monthly operating report addresses the month of May, 2014.

8

reported on the Debtor's Schedules and Statement of Financial Affairs. Additionally, Foundation Capital has been informed that certain other significant items of personal property affixed to the Real Property may have been disposed of after the filing of the present case.

35. The Debtor has not made any payments under the Note since the filing of the Case. Because the Debtor has scheduled Foundation Capital as an over secured creditor, interest and legal fees have continued to accrue on the Note since the filing of the Case thereby reducing the purported equity the Debtor claims to have in the Liened Property.

36. As noted above, the Debtor repeatedly has stated that the purpose of the bankruptcy and its "plan" is to liquidate its assets and pay its creditors. Yet, it has been eight months since the Case was filed and the Debtor has not filed a plan and disclosure statement. Given the lack of complexity, and the Debtor's stated goal, in this Case, the Debtor should have filed a plan and disclosure statement, which, if the Debtor were diligent, could have been confirmed by this time. Instead, the Debtor has been using this Case and the automatic stay to stockpile cash, pay Pastor Parson an exorbitant amount of money, provide Pastor Parson and his son a luxury BMW to drive and protect his other son's (Parson, Jr.) interest in the fraudulently conveyed Transferred Parcels, all while not paying any of its legitimate creditors who provided the Debtor with money and goods.

D.   **The Improper Transfers**.

37. Prepetition, the Debtor, through its trustees, conveyed the Transferred Parcels, which had a tax assessed value of $1,062,000 at the time of the conveyance, to SP-Five Properties, LLC, a Virginia limited liability company ("**SP-Five**"). SP-Five is an entity that is owned by Parson Jr., who is an insider of the Debtor. The consideration for the transfer of the

Transferred Parcels was stated as $180,000, a mere 17% of its value. The consideration is illusory. A copy of the deed for the Transferred Parcels is attached as **Exhibit 10**.

38. At the time of the conveyance of the Transferred Parcels, the trustees of the Debtor were Pastor Parson, Parson Jr. and Rhonda D. Hickman. Thus, Pastor Parson and Parson, Jr., in their capacities as trustees of the Debtor, orchestrated and completed the conveyance of the Transferred Parcels worth in excess of $1,000,000 to Parson, Jr. for $180,000. Purportedly, the $180,000 consideration was the payment of the delinquent taxes on the Transferred Parcels. However, this consideration is illusory. The Debtor's loss of the Transferred Parcels through their conveyance, in return for the payment of delinquent taxes on property it would no longer own, constitutes no consideration at all.

39. Foundation Capital repeatedly has requested that the Debtor file pleadings to recover the Transferred Parcels, which the Debtor has refused to do. Although, the Debtor has stated that only one of the seventeen Transferred Parcels was to be transferred to Parson, Jr., the explanation for the refusal to seek to recover the other sixteen very valuable parcels is that Pastor Parson does not want to sue his son, Parson, Jr.

40. The Debtor also has suggested that the Real Property itself is worth enough to pay all creditors in full. Unfortunately, this is wishful thinking by the Debtor. The Debtor has had the Real Property listed (on an unauthorized basis) with two brokers for at least ten months and the only written offer is approximately $2,000,000. The Debtor owes Foundation Capital in excess of $2,100,000 and owes other creditors $173,148. Clearly, the Transferred Parcels are essential to the full payment of the Debtor's creditors.

41. Foundation Capital acquired information that Parson, Jr. has listed the Transferred Parcels for sale for $1,000,000. A purchaser of the Transferred Parcels likely would qualify as a

bona fide purchaser, giving them a defense under § 550 of the Bankruptcy Code to any recovery efforts.

42. Foundation Capital repeatedly had requested that the Debtor file a fraudulent conveyance action with a corresponding lis pendens to prevent the sale of the Transferred Parcels by Parson, Jr. and to preserve the Debtor's ability to recover the Transferred Parcels for the benefit of its creditors. The Debtor, through its designated representative, Pastor Parson, failed to do so.

43. On April 18, 2014, Foundation Capital, through its counsel, advised the Debtor that SP-Five may be selling the Transferred Parcels and that the Debtor needed to act quickly to prevent this from occurring. A copy of the e mail is attached as **Exhibit 11**. The Debtor was also asked to decide if it would agree that Foundation Capital could bring the action to avoid the conveyance of the Transferred Parcels and to file a *lis pendens* to prevent the transfer during the pendency of the avoidance action.

44. Ultimately, the Debtor agreed that Foundation Capital could bring the avoidance action. However, the Debtor delayed long enough to allow SP-Five to convey the Transferred Parcels to a third party, forcing Foundation Capital to expend significant time and fees to file proceeding to enjoin SP-Five from disposing of the proceeds from the sale of the Transferred Parcels, all of which would have been unnecessary had the Debtor performed its duties as a debtor-in-possession. In fact, SP-Five did dispose of the proceeds by transferring them to Parson, Jr. and his spouse.

### GROUNDS FOR RELIEF - - U.S.C. § 1112(B)(1) - CAUSE

45. As the preceding paragraphs starkly illustrate, the Debtor has failed to perform its duties as the debtor in possession and failed to protect its creditors. Not only has the Debtor

11

failed to perform its duties, it has assigned some of those duties to a third party whose qualifications to perform those duties are unknown. Additionally, Pastor Parson, in his capacity as designated representative of the Debtor's estate, has, at best, chosen to protect his son who has reaped a windfall and, at worst, is working in concert with his son, a former trustee of the Debtor, to convert valuable property of the Debtor for their own personal benefit.

46. During the pendency of the Case, the Debtor has not made any efforts to maintain its property or to pay its secured debt. The property is deteriorating and losing value. 11 U.S.C. § 1112(b)(4)(A).

47. Foundation Capital is the largest secured and unsecured creditor. Foundation Capital will not support a plan of reorganization proposed by the Debtor resulting in the Debtor not being able to reorganize. 11 U.S.C. § 1112(b)(4)(A).

48. Based on, among other things, the allegations set forth above, the Debtor is grossly mismanaging its estate. 11 U.S.C. § 1112(b)(4)(B).

49. As noted above, the Debtor filed the First Bankruptcy Case on September 24, 2013 in order to stop Foundation Capital's foreclosure of the Liened Property, which was scheduled for the following day – September 25, 2013. The First Bankruptcy Case was dismissed on October 24, 2013 because the Debtor failed to file its schedules and statement of financial affairs. As a consequence, the above constitutes an unexcused failure to satisfy timely the reporting requirements established by Title 11 and by the Federal Rules of Bankruptcy Procedure. 11 U.S.C. § 1112(b)(4)(F).

50. The Debtor filed the Case on November 22, 2013 and its exclusive period to file a plan of reorganization expired on March 22, 2014. In addition, the Debtor's motion to extend the exclusivity period was withdrawn by the Debtor. (ECF Docket No. 31 and No. 48.) The Debtor

12

has not yet filed a disclosure statement or a plan of reorganization. As a consequence, the Debtor has failed to file a disclosures statement or to file or confirm a plan within the time fixed by Title 11. 11 U.S.C. § 1112(b)(4)(J).

### RELIEF

51. The allegations set forth in this Motion provides sufficient cause under 11 U.S.C. § 1112(b), including subsections (1), (3) and (4), to dismiss or convert the Case, whichever is in the best interest of the creditors.

52. Although the Bankruptcy Court has the discretion to either dismiss or convert the Case, the particular facts of this case support the Bankruptcy Court converting the Case to Chapter 7 rather than dismissing the Case.

53. An adversary proceeding is pending in the Bankruptcy Court as APN 14-03086 ("**Avoidance Action**"). The goal of the Avoidance Action is to recover property worth as much as $1,000,000 or to recover the value of the property from Parson, Jr. and others.

54. Conversion of the Case to Chapter 7 will enable the Avoidance Action to be prosecuted for the benefit of all the creditors. Dismissal of the Case may enable the insider defendants in the Avoidance Action to retain the fraudulently conveyed valuable property to the detriment of the Debtor's creditors. At a minimum, dismissal will require a creditor to file a similar action in state court. However, a state court action will benefit only the creditor who files the state court action, not all creditors.

55. Conversion of the Case to Chapter 7 will enable the Chapter 7 trustee to control the sale of the Debtor's real estate for the benefit of all of the creditors. Some of the real estate (the Liened Property) is encumbered with the lien in favor of Foundation Capital. The remaining

13

real estate is unencumbered. To maximize the value of the real estate, it should be sold as a single unit.

## LEGAL STANDARD

56. 11 U.S.C. § 1112(b) permits Foundation Capital, as a party in interest on a motion to the Bankruptcy Court, to obtain the conversion or dismissal of the Case. 11 U.S.C. § 1112(b); In re Nelco Ltd., 210 B.R. 707, 709 (Bankr. E.D. Va. 1997).

57. The decision to grant a motion to dismiss or convert under 11 U.S.C. § 1112(b) involves a two-step analysis. In re Superior Siding & Window, Inc., 14 F.3d 240, 242 (4th Cir. 1994).

58. To prevail, Foundation Capital must establish, as a threshold matter, that cause exists to dismiss or convert. Id. This can be established by proving one of the enumerated subparts of 11 U.S.C. § 1112(b)(4) or some other cause because the listed basis are not exclusive. In re Tolco Properties, Inc., 6 B.R. 482, 486 (Bankr. E.D. Va. 1980).

59. Upon satisfying the threshold requirements the Bankruptcy Court must then determine whether it is in the best interests of the creditors to dismiss, convert or retain the status quo. In re Superior Siding, 14 F.3d at 242. The Bankruptcy Court must ascertain the impact on the creditors and on the estate of each option. Id.

60. Finally, the Bankruptcy Court may not convert a case under Chapter 11 to a case under Chapter 7 or dismiss a case under Chapter 11 if the Bankruptcy Court determines that the elements of 11 U.S.C. § 1112 (b)(2)(A) have not been established.

WHEREFORE, Foundation Capital Resources, Inc. prays that the Bankruptcy Court enter an order dismissing or converting the Case and granting such other and further relief as is just and appropriate.

RICHMOND CHRISTIAN CENTER, by and through FOUNDATION CAPITAL RESOURCES, INC.

By   /s/ Paul K. Campsen
     Proposed Counsel

Paul K. Campsen, Esq. (VSB No. 18133)
Dennis T. Lewandowski, Esq. (VSB No. 22232)
Kaufman & Canoles, a professional corporation
150 West Main Street, Suite 2100
Norfolk, VA  23510
Tele:  (757) 624-3000 – Telephone
Fax:   (757) 624-3169 – Facsimile
E-mail:  pkcampsen@kaufcan.com
         dtlwand@kaufcan.com
*Proposed Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2014, a true copy of the foregoing pleading is being filed with the Bankruptcy Court's Electronic Case Filing System, which will send a Notice of Electronic Filing to all creditors and parties-in-interest who are included in the Bankruptcy Court's ECF e-mail notification system, and is also being sent *via* U.S. Mail, postage prepaid, to the following:

Kevin J. Funk, Esq.
DurretteCrump PLC
1111 East Main Street, 16th Floor
Richmond, VA  23219

Robert B. Van Arsdale, Assistant
  United States Trustee
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA  23219

Those parties shown on **Schedule A**.

/s/ Paul K. Campsen

13279322v3

## Schedule A

BB&T Bankruptcy Section
Mailcode: 100-50-01-51
P.O. Box 1847
Wilson, NC 27894-1847

City of Richmond – City Hall
Room 109 Delinquent Taxes
900 East Broad Street
Richmond VA 23219-1907

City of Richmond – Stormwater
Department of Public Utilities
P.O. Box 75650
Baltimore, MD 21275-5650

Dutton Equipment Repair, Inc.
163 Brandon Road
Richmond, VA 23224-1211

M&T Bank
Legal Document Processing
1100 Wherle Drive
Williamsville, NY 14221-7748

SunTrust Bank
Attn: Support Services
P.O. Box 85092
Richmond, VA 23286-0001

Allied Waste Service
P.O. Box 9001009
Louisville, KY 40290-1009

Citibusiness
P.O. Box 6077
Sioux Falls, SD 57117-6077

Department of Motor Vehicles
Adjudication Services
P.O. Box 37075
Washington, DC 20013-7075

City of Richmond VA Real Estate
P.O. Box 105304
Atlanta, GA 30348-5304

Comtel Security Services
8016 Staples Mill Road
Henrico, VA 23228-2713

First Equity Card Corp.
P.O. Box 23029
Columbus, GA 31902-3029

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

SunTrust Bank
P.O. Box 305053
Nashville, TN 37230-5053

BB AND T
P.O. BOX 1847
WILSON, NC 27894-1847

City of Richmond
Dept. of Public Utilities
P.O. Box 26060
Richmond, VA 23274-0001

City of Richmond
Dept. of Public Utilities
730 E. Broad St., 5th Floor
Richmond, VA 23219-1861

Sawkal Communications, Inc.
843 Meadowbridge Road
Mechanicsville, VA 23116-0000

| | |
|---|---|
| M&T Bank<br>P.O. Box 1508<br>Buffalo, NY 14240-1508 | Utility Management Services, Inc.<br>P.O. Box 890134<br>Charlotte, NC 28289-0134 |
| U.S. Treasury<br>Internal Revenue Service<br>Kansas City, MO 64999-0202 | Verizon<br>P.O. Box 660720<br>Dallas, TX 75266-0720 |
| Virginia Department of Taxation<br>P.O. Box 2156<br>Richmond, VA 23218-2156 | WGGM-AM<br>4301 West Hundred Road<br>Chester, VA 23831-1959 |