**B104 (FORM 104) (08/07)**                                       **EDVA**

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|
| **PLAINTIFFS** | **DEFENDANTS** |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☐ Other<br>☐ Trustee |
| **CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED) ||

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought ||

B104 (FORM 104) (08/07), Page 2

| **BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES** |||
|---|---|---|
| NAME OF DEBTOR | BANKRUPTCY CASE NO. ||
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** |||
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) |||
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) ||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, *unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

*Per LBR 7003-1, in the EDVA, a properly completed Adversary Proceeding Cover Sheet is required.

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In Re: ) | |
| ) | |
| RICHMOND CHRISTIAN CENTER ) | No. 13-36312 |
| ) | |
| Debtor ) | Chapter 11 |
| ) | |
| ) | |
| MOUNTAIN OF BLESSINGS ) | |
| CHRISTIAN CENTER ) | |
| ) | |
| Plaintiff ) | |
| v. ) | Adversary Proceeding |
| ) | |
| BRUCE H. MATSON, TRUSTEE ) | No. _____ |
| Trustee in Bankruptcy for ) | |
| Richmond Christian Center ) | |
|  Serve at:  Riverfront Plaza, East Tower ) | |
|         951 East Byrd Street, Eighth Floor ) | |
|         Richmond, VA  23219 ) | |
| ) | |
| ) | |
| RICHMOND CHRISTIAN CENTER ) | |
| Serve:  c/o Rhonda Hickman, Trustee or ) | |
|        c/o Calvin Yarbrough, Trustee or ) | |
|        c/o Raymond Partridge, Trustee or ) | |
|          any other trustee ) | |
|          214 Cowardin Avenue ) | |
|           Richmond, VA  23224 ) | |
| and | |
| RHONDA HICKMAN, ) | |
| CALVIN YARBROUGH and ) | |
| RAYMOND PARTRIDGE, Trustees for ) | |
| Richmond Christian Center ) | |
|    Serve at:  214 Cowardin Avenue ) | |
|           Richmond, VA 23226 ) | |
| Defendants ) | |

## **COMPLAINT**

Mountain of Blessings Christian Center ("Mountain of Blessings"), by counsel, under 11

U.S.C. § 363, Federal Rule of Bankruptcy Procedure 7001 et seq. and applicable non-bankruptcy

law, as its complaint against the Defendants, respectfully alleges:

## JURISDICTION

1.  This Court exercises subject matter jurisdiction over this cause under 28 U.S.C. § 1334 and this adversary proceeding is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (N) and (O).

## PARTIES

2.  Mountain of Blessings is a Virginia non-profit corporation and is a church.

3.  Bruce H. Matson (the "Trustee") is the Chapter 11 Trustee for Richmond Christian Center, Debtor, appointed as such on or about December 29, 2014.

4.  Richmond Christian Center ("RCC" or the "Debtor") is an unincorporated association, is the Debtor in this chapter 11 case and was debtor in possession until the appointment of the Trustee on or about December 29, 2014. RCC is a church.

5.  The trustees of RCC include Rhonda Hickman, Calvin Yarbrough and Raymond Partridge, all of whom are made parties hereto in their capacities as trustees of the Debtor. Trustee and Defendant Bruce H.. Matson has announced that Stephen A. Parson, Sr., Pastor for RCC, has resigned as a trustee for RCC and he has not been made party hereto for that reason.

## VENUE

6.  Venue is laid in this court under 28 U.S.C. § 1409(a).

## FACTS

7.  This is the second Chapter 11 case of RCC. The first case was Case No. 13-35141-KRH, filed September 24, 2013, dismissed by order entered October 24, 2013 because RCC "failed to timely file required lists, schedules and statements within time periods as set forth

in Local Rule 1007-1." Exhibit A, attached hereto.

8.  RCC filed the First Case because Foundation Capital Resources, Inc. ("Foundation Capital"), its secured real estate lender under a September 23, 2005 $4,400,000 original principal amount loan, had scheduled and noticed a foreclosure sale of RCC's real property located at 214 Cowardin Avenue, Richmond, Virginia for September 25, 2013.

9.  Following the dismissal of the First Case, RCC filed this Second Case on November 22, 2013 at 9:54 a.m. RCC filed the Second Case because Foundation Capital had scheduled and noticed a foreclosure sale of RCC's real property located at 214 Cowardin Avenue, Richmond, Virginia for November 22, 2013 at 10:00 a.m.

10. As of April 11, 2014 the Debtor had not filed a disclosure statement or a proposed plan of reorganization and had made no payments to Foundation Capital disclosed on its monthly operating reports for December 2013 or January or February 2014. On April 11, 2014 Foundation Capital filed its motion to appoint a Trustee for the Debtor.

11. On April 18, 2014 the Debtor filed to employ Real Estate Brokers, Inc. as its real estate broker "for the purpose of marketing for sale one or more parcels of the Debtor's real property." [Docket Entry #45, paragraph 5, page 2]. The Debtor also filed Notice of this Motion but without hearing date.  Review of the docket in this case indicates that no hearing on this motion has taken place.

12. As of July 18, 2014 the Debtor had not filed a disclosure statement or a proposed plan of reorganization and had made no payments to Foundation Capital disclosed on its monthly operating reports for March through May 2014. On July 18, 2014, Foundation Capital filed its motion to dismiss this case.

3

13.     On September 25, 2014 the Debtor filed its motion to continue hearings set for September 26, 2014 on Foundation Capital's motions to appoint a trustee and to dismiss this case.

14.     On September 25, 2014 the Debtor filed its application to employ Motley's Auction and Realty Group for assistance in "the auctioning of real estate" and to compensate Motley's "through a commission of ten percent (10%) or $2,500, whichever is higher, computed against the total purchase price. A buyer's premium of 10% will be charged to the purchaser." [Docket #149, paragraphs 4 and 7]. This Application also sought approval of a written agreement with Motley's attached to the Application as Application Exhibit A (the "Motley's Agreement"). The real estate to be sold by Motley's consisted of the real property subject to Foundation Capital's deed of trust as well as other real estate not so encumbered. Under Article III, Compensation, of the Motley's Agreement, the Debtor as Seller agreed:

### ARTICLE III
### Compensation

If during the term of this Agreement, Seller sells or transfers the Property, or enters into a contract to sell or transfer the Property to a purchaser who is ready, willing and able to purchase on terms acceptable to Seller, or Seller receives a written offer signed by a purchaser by which such purchaser offers to purchase the Property on the terms and conditions set forth in Article II above, then Seller agrees to pay to Company the following compensation:

☒ 10% of the contracted for purchase price of the Property

15.     In Article IV, paragraph C of the Motley's Agreement, the Debtor as Seller also agreed:

The Seller shall cooperate fully with Company to bring about a sale of the Property, assist Company in preparing the Property for the sale as reasonably requested by Company, provide Company with any requested information to assist in the marketing or sale of the Property, refer any and all inquiries regarding the Property to

4

> Company, provide complete and accurate information regarding any disclosure, representation or warranty that may be required under this Agreement or pursuant to Virginia law, and convey the Property as required by contract entered into with a purchaser. Seller understands that these obligations are a material term of this Agreement.

16.     In Article IV, paragraph D of the Agreement, the Debtor as Seller also agreed:

> If Seller should withdraw the Property from the market or postpone or cancel any auction during the term of this Agreement (or any extension thereof or addenda attached hereto), without written consent from Company, or otherwise prevents Company from selling
>
> the Property during the term of this Agreement (or any extension thereof or any Addenda hereto), Seller agrees to pay Company the compensation as set forth in Article III above as compensation for its services hereunder or as specified in any Addenda incorporated into this Agreement.

17.     In addition to the other matters requested in docket #149, the Debtor also requested permission to enter into a certain Auction Addendum. This Addendum included the following provision respect Motley's Commission:

> The Company will charge a Commission / Buyer's Premium as identified above. The Commission / Buyer's Premium will be added to the amount of the high bid to become the total purchase price of the Property, which shall be due and payable at settlement /closing. The Buyer's Premium will be deemed earned by the Company upon the sale of the property at auction, which shall be deemed to have occurred at the fall of the auctioneer's hammer. Upon the effective date of this Addendum, the Company shall be entitled to the Commission / Buyer's Premium identified above at the time of any transfer of the Seller's interest in the Property (including any sale of any applicable promissory note) up to and including any auction of the Property.

18.     Also on September 25, 2014, Docket #152, the Debtor sought the entry of an order authorizing the sale of its real property (that subject to the Foundation Capital financing and that not so subject) at public auction free and clear of all liens, claims, encumbrances and interests pursuant to 11 U.S.C. §§ 363(b) and (f). There were no conditions expressed in this Motion under which the Debtor would not sell its property other than this Court's decision not to approve the sale.

5

19. On October 21, 2014, Docket # 167, the Debtor filed an amended motion for order authorizing sale of property of its estate. In this motion the Debtor requested authority to auction its real properties (described as seventeen parcels of real property located in the City of Richmond).

20. The Bankruptcy Court approved the Debtor's Application to retain Motley's, to include the Motley's Agreement and the provision therein where the Debtor agreed to "convey the Property as required by contract entered into with a purchaser" by order entered November 12, 2014 under Docket #180.

21. The Bankruptcy Court approved the Debtor's Amended Motion to Sell its real property under 11 U.S.C. § 363 by order entered November 12, 2014 as Docket #181. There were no conditions expressed in this order except that "[t]he minimum bid for the subject property will be $2.2 million which includes a 10% buyer's premium from which the auctioneer will be paid" and that the sale will be "subject to the Court's subsequent confirmation and approval of the resulting contract of sale."

22. On November 20, 2014, Motley's Asset Disposition conducted the auction of the Debtor's real property. Mountain of Blessings was the high and successful bidder. On December 2, 2014 the Debtor Filed Report of Auction Results under docket #'s 184 and 185. These reports appear to be identical except that #185 adds as Exhibit A thereto a copy of the Purchase Agreement, ultimately approved by the Court under order of record as docket #192 and a service list. Both reports disclosed that:

6

2. At the conclusion of the auction, Mountain of Blessings Christian Center, a Virginia corporation, was the highest bidder at $2,156,000 which includes the 10% buyer's premium. Although this amount is less than the $2,200,000 minimum bid in the approved listing agreement, Motley's has agreed to reduce its commission by $44,000 to permit the debtor to net $2,000,000.

23. On December 19, 2014, docket #192, the Court entered its Supplemental Order Approving Sale. In part pertinent to this proceeding, the Bankruptcy Court ordered:

A. The results of the auction as set forth in the Report of Sale filed herein are confirmed;

B. The sales contract affixed to the Report of Sale is hereby approved;

C. The debtor is authorized to take all necessary steps to finalize the conveyance of the Property, including obtaining the approval of the Richmond Circuit Court.

No appeal was timely noticed from this order by the Debtor or any other party in interest. The Trustee, following his appointment, has not sought to avoid or otherwise amend this order and it is now final and remains in force and effect.

24. On December 18, 2014, the day the Court signed the order entered on December 19, 2014 as docket #192, Jennifer D. Mullen, Esq., real estate counsel for Mountain of Blessings, wrote Kevin Funk, Esq., counsel for the Debtor, by email as follows:

7

> **From:** Jennifer Mullen
> **Sent:** Thursday, December 18, 2014 11:01 AM
> **To:** 'Kevin Funk'
> **Subject:** Order and Documents
>
> Kevin,
>
> Please call Peggy with Judge Philips office to obtain the Order and then provide the Circuit Court order as soon as possible. I will either need a release of the Deed of Trust or a payoff for the title company that are not the Foundation Capital liens. I have attached the draft documents for your review, I will finalize with the settlement statement once the taxes have been confirmed.
>
> Thank you,
> Jennifer
>
> Jennifer D. Mullen, Esq.
> Roth Doner Jackson Gibbons Condlin, PLC
> 919 E. Main Street, Suite 2110
> Richmond, Virginia 23219-4625
> 804-977-3374 office
> 804-441-8438 fax
> jmullen@rothdonerjackson.com
>
> **PLEASE NOTE OUR NEW ADDRESS**
>
> **NOTICE:** Information contained in this transmission to the named addressee is proprietary information and is subject to attorney-client privilege and work product confidentiality. If the recipient of this transmission is not the named addressee, the recipient should immediately notify the sender and destroy the information transmitted without making any copy or distribution thereof.

25. On December 18, 2014, Ms. Mullen caused the letter attached hereto as Exhibit B to be delivered to Mr. Funk. Ms. Mullen additionally provided to Mr. Funk as a courtesy certain documents pertinent to the contract between the parties and to assist Mr. Funk in performing the Debtor's obligations under the December 19, 2014 order entered as docket #192. Included within the documents provided by Ms. Mullen were a proposed Owner's Affidavit, Agreement and Gap Indemnity benefitting Old Republic National Title Insurance Company, unexecuted form of special warranty deed from the Trustees of Richmond Christian Center as grantor to Mountain of Blessings as grantee and IRS Form 1099-S for completion and execution by Richmond Christian Center. A true copy of the special warranty deed prepared by Ms. Mullen for the Debtor in order to convey title to Mountain of Blessings and as delivered to Mr. Funk on behalf of RCC is attached as Exhibit C.

26. Although the Debtor's in the Motley's Agreement agreed to "convey the Property as required by contract entered into with a purchaser," although Mountain of Blessings was and

8

is such a purchaser, although the Court approved the Motley's Agreement (Docket # 180) and the sale to Mountain of Blessings (Dockets # 180, 181 and 192) and although counsel for Mountain of Blessings delivered to counsel for RCC a deed form sufficient to convey title in compliance with the Motley's Agreement and Orders of this Court, RCC failed and refused to deliver the required deed to Mountain of Blessings and failed and refused to take any actions to comply with its duties under the Purchase Agreement of Sale as approved by the Court..

27. By order dated January 6, 2015, the Bankruptcy Court approved the appointment of Bruce H. Matson as Trustee for the Debtor. On January 8, 2015 Jennifer D. Mullen, Esq., real estate counsel for Mountain of Blessings, caused the hand delivery of the letter attached hereto as Exhibit D to Christopher L. Perkins, Esq., counsel for the Trustee, following up on a telephone conference, and requested the Trustee enforce Mountain of Blessings' Court approved sales agreement with the Debtor. The letter closed with statement that "The Purchaser is ready, willing and able to close and requests the Trustee provide draft documents for Purchaser's review as soon as practicable." The letter as delivered to Mr. Perkins contained the enclosures stated therein.

28. The Trustee to date has failed and refused to close under Mountain of Blessings' Court approved sales agreement with the Debtor.

29. On February 2, 2015, Mountain of Blessings by its prior counsel filed under docket # 218 a Motion to Compel Trustee to Complete Sale of Real Property & Memorandum in Support. This motion was withdrawn by the undersigned counsel on behalf of Mountain of Blessings in open court on February 24, 2015 with leave of the Bankruptcy Court and without prejudice as the Motion sought injunctive relief available by adversary proceeding but not as a

contested matter.

30. On February 17, 2015 the Trustee objected to the Motion to Compel, docket #218, on the following grounds, in addition to the issue of filing the motion as a contested matter:

a. The order approving the sale of the property to Mountain of Blessings, docket # 192, only authorized the Debtor to sell its property to Mountain of Blessings but did not compel the Debtor to sell the property;

b. Specific performance of the contract is not appropriate since:

• the Purchase Agreement never was signed by the Debtor, which has actively opposed a sale and thus the Virginia statute of frauds precludes enforcement of the contract,

•the Richmond Circuit Court never has approved the contract between the Debtor and Mountain of Blessings and

•Mountain of Blessings has breached the sales contract.

31. The foregoing objections are without merit. By way of illustration and not limitation:

•the actions of Motley's as auctioneer in knocking down the sale were as agent for the Debtor as seller and as such took the auction sale out of the statute of frauds, *Yaffe v. Heritage Savings & Loan*, 235 Va. 577, 583, 369 S.E.2d 404 (1988) (auctioneer at foreclosure auction was agent for buyer and memorandum of sale created by auctioneer met requirements of statute of frauds as to defaulting buyer); further, in reporting the result of the auction (docket # 185, Ex A, the Debtor reported to the Court that on "November 20, 2014, Motley's Asset Disposition conducted a live auction of the debtor's real estate pursuant to this Court's prior

10

approval, which per the terms of applicable non bankruptcy law and the contracts entered into with Motley's with Court approval were sufficient to comply with any requirements of the statute of frauds; further, in presenting the December 19, 2014 supplemental order (docket #192) to the court for approval, the debtor, by its court approved counsel indicated its consent with the endorsement "I ask for this"; further, per the Purchase Agreement of Sale attached to docket #185 as approved by the Court under docket #192, Motley's was the agent for Seller only and as such was authorized to bind the Debtor to the Purchase Agreement of Sale;

•the only reason the Richmond Circuit Court never approved the sale to Mountain of Blessings is that the Debtor, in breach of its fiduciary duties as debtor in possession and in breach of the sale agreement approved by the Court, never asked the Circuit Court for that relief, thus frustrating the contract; further, if and to the extent this Court or any appellate court should rule that the Debtor had or has no duty to request that relief from the Circuit Court and that doing so was strictly optional with the Debtor, Mountain of Blessings now waives that requirement and relies alone on the authority of the Trustee to convey the real estate in question to Mountain of Blessings under the Purchase Agreement of Sale approved by the Court and

•the assertion that Mountain of Blessings has breached its duties under the sales contract as approved by this Court is without merit, as demonstrated by, *inter alia*, the correspondence of Mountain of Blessings counsel Jennifer Mullen with Debtor's counsel Kevin Funk and with Trustee's counsel Christopher Perkins.

Count I
(Specific Performance of Purchase Agreement of Sale
Approved by the Bankruptcy Court)

32.    The allegations of paragraphs 1-31 are incorporated by this reference.

33. Mountain of Blessings is and at all required times since the approval of the Purchase Agreement of Sale by this Court has been ready, willing and able to close on the Purchase Agreement of Sale and has communicated that to both the Debtor and to the Trustee.

34. Mountain of Blessings has performed all preconditions to closing under the Purchase Agreement of Sale as approved by the Court and is and remains ready, willing and able to close under the Purchase Agreement of Sale as approved by the Court.

35. The Debtor first, and then the Trustee, without cause and in breach of contract, have failed and refused to close under the Purchase Agreement of Sale as approved by the Court.

36. Mountain of Blessings at all material times has acted in good faith.

37. Mountain of Blessings lacks an adequate remedy at law.

38. Virginia law contains no requirement that, in order for the performing seller or buyer to obtain specific performance of a contract to sell real estate, the contract at tissue must contain language containing reference to the remedy of specific performance in *haec verba*.

39. The Debtor and the Trustee have repeatedly, consistently and materially breached their obligations under the Purchase Agreement of Sale as approved by the Court.

40. The Debtor and the Trustee have frustrated and prevented performance by Mountain of Blessings under the Purchase Agreement of Sale as approved by the Court.

41. The description of the real property which Mountain of Blessings requests the Court to order the Trustee and the Debtor to convey to Mountain of Blessings is attached as Exhibit E.

Count II
(Administrative Claim)
(In the Alternative and Only If the Court
Does Not Grant Specific Performance)

42. The allegations of paragraphs 1-41 are incorporated by this reference.

43. Pleading in the alternative, if and only if the Court declines to grant to Mountain of Blessings specific performance of the Purchase Agreement of Sale as approved by the Court, Mountain of Blessings will be damaged in amounts now unknown but likely to be material.

44. If the Court does not require specific performance from the Trustee and the Debtor, Mountain of Blessings will be required to research, find, negotiate, purchase and construct a replacement property for its ministry different from the property subject to the Purchase Agreement of Sale and these actions will cause Mountain of Blessings to suffer consequential damages. These consequential damages are reasonably foreseeable and are known to the Trustee and to the Debtor because, *inter alia*, the purpose for Mountain of Blessings' purchase of the Debtor's property – relocation of its church facilities to a larger property to meet the needs of a growing ministry – is and at all times material hereto has been known to the Trustee and to the Debtor. These consequential damages additionally will be the proximate cause and result of the Trustee's and Debtor's failure to close under the Purchase Agreement of Sale as approved by the Court and would not and will not be suffered by Mountain of Blessing if granted specific performance of the Purchase Agreement of Sale as approved by the Court .

45. Prior to bidding on the Debtor's auction sale of its real property, Mountain of Blessings, after a detailed study of the Richmond metropolitan area, determined that, other than the Debtor's property now under contract, there were no existing premises in the metropolitan area amenable to the use of Mountain of Blessings; any other property would require the design

13

and construction of new physical facilities. Damages to be caused by the breach of the Debtor and the Trustee of their duty to close under the Purchase Agreement of Sale approved by the Court, arising from the need to purchase and build on a substitute site, presently are estimated as:

    a.    $450,000 to purchase approximately 15 acres unzoned but buildable land with no unusual subsurface conditions and served by all utilities including municipal water and sewer, and

    b.    70,000 sq ft building, $78/ sq ft construction cost;

    c.    Total cost: $5,910,000, less approximately $2,000,000 saved by reason of Trustee/RCC refusal to close on the Purchase Agreement of Sale approved by the Court and less approximately $1,176,540 not required for rehabilitation of existing RCC facilities, leaving

    d.    Net damages of $2,733,460.00.

46.    Additionally, Mountain of Blessings has deposited $196,000.00 with Motley's Asset Disposition as provided under the Purchase Agreement of Sale approved by the Court, and until those funds are returned to Mountain of Blessings, that sum is an additional damage caused by the Trustee's and the Debtor's failure to close under the Purchase Agreement of Sale approved by the Court.

47.    Additionally, Mountain of Blessings has incurred certain reasonable expenses in reliance on the idea that the Purchase Agreement of Sale of Property under 11 U.S.C. § 363, made with a Debtor after approval by the Court, is enforceable and binding on the Debtor and on successors in interest such as the Trustee. These expenses are presently estimated at $57,689.00:

    a.     $7,500 for expenses of lender's counsel,

    b.    $18,914.00 for expenses of counsel for Mountain of Blessings,

   c. $9,400 for land survey,

   d. $17, 745.00 as Lender Bank fees,

   e. $750.00 as title fees/search fees and

   f. $3,380 for Phase 1 Environmental Site Assessment,

  48. Altogether, estimated damages and reliance costs incurred and suffered and to be incurred and suffered by Mountain of Blessings as a result of the Trustee's and Debtor's failure and refusal to close under the Purchase Agreement of Sale approved by the Court (excluding the costs of prosecution of this adversary proceeding) are estimated to be $2,987,149.00. These damages will be a cost of the administration of this case, allowable under 11 U.S.C. § 503(a), the Court having approved the Purchase Agreement of Sale during the administration of this case and the breach by the Trustee and the Debtor of the Purchase Agreement of Sale with Mountain of Blessings as approved by the Court having taken place during the administration of this case.

  49. Mountain of Blessings expects to present other and additional evidence of damages at trial, if and only if the Court does not grant the requested remedy of specific performance.

  50. The Trustee lacks now, and will lack at all times, sufficient cash so as to pay all damages suffered by Mountain of Blessings in full as required by bankruptcy law; a result that would not occur if the Court grants specific performance of the Purchase Agreement of Sale with Mountain of Blessings.

  WHEREFORE, premises considered, Mountain of Blessings Christian Center, by counsel, prays that the Bankruptcy Court specifically enforce the Purchase Agreement of Sale with Mountain of Blessings, as approved by the Court, for the benefit of Mountain of Blessings,

order the Trustee, the Debtor and the Debtor's trustees immediately to deliver (if previously executed) and promptly to execute (if not executed) and deliver all documents required or contemplated by the Purchase Agreement of Sale approved by the Court, that Mountain of Blessings recover its costs incurred herein and that Mountain of Blessings have such other and further relief as equity permits or that justice requires.

In the alternative, if and only if the Court does not grant to Mountain of Blessings specific performance of the Purchase Agreement of Sale as approved by the Bankruptcy Court, then Mountain of Blessings Christian Center prays that the Court approve Mountain of Blessings request for payment of administrative expense and fix same at the sum of $2,733,460.00 or such other greater number as may be demonstrated at trial and order than such amount be paid in cash.

Mountain of Blessings further prays for the recovery of costs incurred herein and for such other and further relief as equity permits and justice requires.

                          MOUNTAIN OF BLESSINGS
                           CHRISTIAN CENTER.


By: _____
      Of Counsel

W. R. Baldwin, III (VSB #16988)
Honey, Baldwin & Meyer, LLP
5600 Grove Avenue
Richmond, VA  23226
(804) 285-3888 (voice)
(804) 285-7779 (fax)
Counsel for Mountain of Blessings Christian Center

16