## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RICHMOND CHRISTIAN CENTER, | ) | Case No. 13-36312-KLP |
| | ) | |
| Debtor. | ) | |
| | ) | |

---

### AMENDED CHAPTER 11 TRUSTEE'S PLAN OF REORGANIZATION

---

Christopher L. Perkins (VA Bar No. 41783)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
(804) 783-7550

*Counsel to Bruce H. Matson, Chapter 11 Trustee*

# TABLE OF CONTENTS

Page

ARTICLE I. DEFINITIONS AND INTERPRETATION.............................................................1

ARTICLE II.  [INTENTIONALLY OMITTED]

ARTICLE III.  ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS,
U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS .....................................7

ARTICLE IV.  CLASSIFICATION OF CLAIMS AND INTERESTS .......................................8

ARTICLE V.  TREATMENT OF CLAIMS AND INTERESTS ..................................................9

ARTICLE VI.  ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION
BY ONE OR MORE CLASSES OF CLAIMS OR INTERSTES................................................10

ARTICLE VII.  MEANS FOR IMPLEMENTATION...................................................................11

ARTICLE VIII.  DISTRIBUTIONS.............................................................................................12

ARTICLE IX.  PROCEDURES FOR RESOLVING CLAIMS....................................................13

ARTICLE X.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES..........................15

ARTICLE XI.  CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN...........15

ARTICLE XII.  EFFECT OF CONFIRMATION.........................................................................17

ARTICLE XIII.  RETENTION OF JURISDICTION ..................................................................18

ARTICLE XIV.  MISCELLANEOUS PROVISIONS..................................................................19

<u>EXHIBITS</u>

Exhibit A        Proposed Bylaws of Richmond Christian Center, Inc.

## INTRODUCTION

Bruce H. Matson as Chapter 11 Trustee for Richmond Christian Center in the above-captioned case, proposes the following chapter 11 plan for the resolution of the Claims against and any Interests in the Debtor.  Reference is made to the Disclosure Statement for a discussion of the Debtor' history, businesses, properties and a summary of this Plan.

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

**A.**    *Definitions.*

The following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural):

**1.1.**    ***Administrative Expense Claim*** means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of the kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 363, 364(c)(1), 365, 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code (other than a Fee Claim or U.S. Trustee Fees) for the period from the Petition Date to the Effective Date.

**1.2.**    ***Allowed Claim*** or Allowed "_____" Claim (with respect to a specific type of Claim, if specified) means: (a) any Claim (or a portion thereof) as to which no action to dispute, deny, equitably subordinate or otherwise limit recovery with respect thereto, or alter priority thereof, has been sought by the Trustees, as applicable and as authorized pursuant to the Plan, or, if an action to dispute, deny, equitably subordinate or otherwise limit recovery with respect thereto, or alter priority thereof, has been sought, to the extent such Claim has been allowed (whether in whole or in part) by a Final Order of a court of competent jurisdiction with respect to the subject matter; or (b) any Claim or portion thereof that is allowed (i) in any contract, instrument or other agreement entered into in connection with the Plan, (ii) pursuant to the terms of the Plan, (iii) by Final Order of the Bankruptcy Court, or (iv) with respect to an Administrative Expense Claim only (x) that was incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases to the extent due and owing without defense, offset, recoupment or counterclaim of any kind, and (y) that is not otherwise disputed.

**1.3.**    ***Assets*** means all of the right, title and interest of the Debtor in and to property of whatever type or nature (real, personal, mixed, intellectual, tangible or intangible).

**1.4.**    ***Ballot*** means the form approved by the Bankruptcy Court and distributed to holders of impaired Claims and Interests entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan.

**1.5.**    ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**1.6.** ***Bankruptcy Court*** means the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, or any other court exercising competent jurisdiction over the Chapter 11 Cases or any proceeding therein.

**1.7.** ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia.

**1.8.** ***Bar Date*** means the deadline for filing proof of a Claim that arose on or prior to the applicable Petition Date, as established by an order of the Bankruptcy Court or the Plan, and as applicable to such Claim.

**1.9.** ***Business Day*** means any day other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

**1.10.** ***Cash*** means the legal currency of the United States and equivalents thereof.

**1.11.** ***Causes of Action*** means any and all actions, causes of action (including avoidance actions), suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, and expressly including any defenses or equitable remedies necessary for the adjudication of such Causes of Action.

**1.12.** ***Chapter 11 Trustee*** means Bruce H. Matson, who was appointed by the Bankruptcy Court by order dated December 29, 2014 to serve as a chapter 11 trustee in the Case pursuant to 11 U.S.C. section 1104.

**1.13.** ***Claim*** means any "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

**1.14.** ***Class*** means each category of Claims or Interests established under Article IV of the Plan pursuant to sections 1122 and 1 123(a)(1) of the Bankruptcy Code.

**1.15.** ***Collateral*** means any property or interest in property of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.16.** ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**1.17.** ***Confirmation Hearing*** means the first hearing to be held by the Bankruptcy Court regarding confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.18.** ***Confirmation Order*** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**1.19.** ***Debtor*** means Richmond Christian Center, an unincorporated association which commenced a case under chapter 11 of the Bankruptcy Code in the Court.

**1.20.** ***Disallowed*** means a finding of the Bankruptcy Court in a Final Order, or provision in the Plan providing, that a Disputed Claim shall not be an Allowed Claim.

**1.21.** ***Disclosure Statement*** means the disclosure statement, as amended, that relates to this Plan, as such disclosure statement may be amended, modified, or supplemented (including all exhibits and schedules annexed thereto or referred to therein).

**1.22.** ***Disclosure Statement Hearing*** means a hearing held by the Bankruptcy Court to consider approval of the Disclosure Statement as containing adequate information as required by section 1125 of the Bankruptcy Code, as the same may be adjourned or continued from time to time.

**1.23.** ***Disputed Claim*** means, as of any relevant date, any Claim, or any portion thereof: (a) that is not an Allowed Claim or Disallowed Claim as of the relevant date; or (b) for which a proof of Claim or Interest has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtor or any party in interest has interposed a timely objection or request for estimation, which timely objection or request for estimation has not been withdrawn or determined by a Final Order as of the relevant date.

**1.24.** ***Distribution Date*** means (a) the Initial Distribution Date, or (b) any Subsequent Distribution Date.

**1.25.** ***Distribution Record Date*** means, with respect to all Classes, the Effective Date or such other date as shall be established by the Bankruptcy Court in the Confirmation Order.

**1.26.** ***Effective Date*** means the first Business Day on which all conditions to the Effective Date set forth in Section 13.2 hereof have been satisfied or waived, and no stay of the Confirmation Order is in effect.

**1.27.** ***Estate*** means each estate created with respect to each Debtor in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

**1.28.** ***Family Members*** means, with respect to any individual, such Person's spouse, children, siblings, parents and all lineal descendants of such Person's parents (in each case, natural or adopted).

**1.29.** ***FCR*** means Foundation Capital Resources, Inc.

**1.30.** ***FCR Collateral*** means all or substantially all of the real property owned by the Debtor.

3

**1.31.** *FCR Loan Documents* means the loan and security documents to evidence the rights and claims that FCR as a senior, secured lender to the Reorganized Debtor, including all promissory notes, deeds of trust, and related instrument and agreements.

**1.32.** *Fee Claims* means any Claims by a Professional Person for compensation, indemnification or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Chapter 11 Cases.

**1.33.** *Final Order* means an order, ruling or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Case (or by the clerk of such other court of competent jurisdiction on the docket of such court) that: (a) is in full force and effect; (b) is not stayed; and (c) is no longer subject to review, reversal, modification or amendment, by appeal or writ of certiorari; provided, however, that the possibility that a motion under Rule 50 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Civil Procedure or Bankruptcy Rules, may be filed relating to such order, ruling or judgment shall not cause such order, ruling or judgment not to be a Final Order.

**1.34.** *Foundation Capital* means or refers to FCR or Foundation Capital Resources, Inc.

**1.35.** *General Unsecured Claim* means any Claim other than: (a) a Secured Claim; (b) an Administrative Expense Claim; (c) a Fee Claim; (d) a Priority Tax Claim; and (e) a Priority Non-Tax Claim, and shall not include Claims that are Disallowed or released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of this Plan or otherwise.

**1.36.** *Initial Distributions* means the payment by the Reorganized debtor of the first payment due to each holder of an Allowed Claim.

**1.37.** *Initial Distribution Date* means the Effective Date or as soon as reasonably practicable thereafter as may be reasonably determined by the Chapter 11 Trustee.

**1.38.** *IRS* means the Internal Revenue Service.

**1.39.** *Chapter 5 Litigation* means all claims and/or Causes of Action of the Debtor arising under chapter 5 of the Bankruptcy Code or analogous applicable state law.

**1.40.** *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.41.** *Notice Parties* shall mean, except as may otherwise be specified in the Confirmation Order, (a) the U.S. Trustee, (b) the Chapter 11 Trustee, and (c) the Debtor.

**1.42.** *Person* means any individual, corporation, partnership, association, indenture trustee, limited liability company, organization, joint stock company, joint venture, estate, trust,

4

governmental unit or any political subdivision thereof, Interest holder, or any other entity or organization.

**1.43.** *Petition Date* means November 22, 2013.

**1.44.** *Plan* means this chapter 11 plan, as amended, proposed by the Chapter 11 Trustee, including, without limitation, the exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof or thereof.

**1.45.** *Plan Consummation* means, in respect of the Plan and provided the entry of the Confirmation Order has not been reversed or vacated, the date by which the following has been completed: (i) the Debtor and the Reorganized Debtor shall have completed the corporate restructuring of the Debtor as provided in section 7.1 of the Plan, (ii) the Reorganized Debtor shall have executed each of the Plan Documents, including the FCR Loan Documents, (iii) all Claims have been resolved, (iv) the Reorganized Debtor shall have made the Initial Distributions, and the Chapter 11 Trustee shall have been discharged by an order of the Bankruptcy Court.

**1.46.** *Plan Documents* means the documents, other than this Plan, to be executed, delivered, assumed, and/or performed in connection with the consummation of this Plan, including, without limitation, the documents to be included in the Plan Supplement, and any and all exhibits to the Plan and the Disclosure Statement.

**1.47.** *Priority Non-Tax Claim* means any Claim, other than an Administrative Expense Claim, a Fee Claim and a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

**1.48.** *Priority Tax Claim* means any Claim of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.49.** *Pro Rata Share* means with respect to any distribution on account of any Allowed Claim or Interest, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim or Interest bears to the aggregate amount of all Allowed Claims or Interests in its Class.

**1.50.** *Professional Person(s)* means all Persons retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases, pursuant to sections 327, 328, 330 or 1103 of the Bankruptcy Code, excluding any ordinary course professionals retained pursuant to order of the Bankruptcy Court.

**1.51.** *Reorganized Debtor* means the Debtor as of the Effective Date as reorganized by and subject to the terms of this Plan.

**1.52**. *Schedule of Assumed Contracts and Leases* means a schedule of the contracts and leases to be assumed pursuant to section 365 of the Bankruptcy Code and Section 12.1 hereof, which shall be filed by the Debtor at least ten (10) calendar days prior to the start of the Confirmation Hearing, as such schedule may be amended from time to time on or before the Confirmation Date.

**1.53.** *Secured Claim* means a Claim: (a) that is secured by a valid, perfected and enforceable Lien on Collateral, to the extent of the value of the Claim holder's interest in such Collateral as of the Confirmation Date; or (b) to the extent that the holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code, or to the extent of the amount subject to setoff.

**1.54.** *U.S. Trustee* means the United States Trustee for the Eastern District of Virginia, Richmond Division.

**1.55.** *U.S. Trustee Fees* means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

**1.56.** *Voting Deadline* means the date specified in the Disclosure Statement, the Ballots, the Voting Procedures Order or related solicitation documents approved by the Bankruptcy Court as the last date for holders of Claims or Interests entitled to vote on this Plan to submit their Ballots with respect to this Plan, as such date may be extended.

**1.57.** *Voting Procedures Order* means that certain order dated xxxx, 2015, [Docket Number xxx], which sets forth the deadlines, procedures and instructions for voting to accept or reject this Plan.

**B.** *Interpretation; Application of Definitions and Rules of Construction.*

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Except for the rule of construction contained in section 102(5) of the Bankruptcy Code, which shall not apply, the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Any reference in this Plan to a contract, instrument, release, indenture, or other agreement or documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. Subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations

arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns.

**ARTICLE II**
**[INTENTIONALLY OMITTED]**

**ARTICLE III**
**ADMINISTRATIVE EXPENSE CLAIMS,**
**FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS**

All Claims and Interests, except Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims, are placed in the Classes set forth in Article III below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims of the Debtor have not been classified, and the holders thereof are not entitled to vote on this Plan. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

A Claim or Interest also is placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. However, a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

**3.1.**    *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date an Administrative Expense Claim becomes an Allowed Claim, the Reorganized Debtor shall pay such Allowed Administrative Expense Claim; <u>provided, however,</u> that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Reorganized Debtor, as Debtor in possession, shall be paid by the Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such liabilities.

**3.2.**    *Fee Claims.*

Any Professional Person seeking allowance by the Bankruptcy Court of a Fee Claim shall file its respective final application for allowance of compensation for services rendered and

reimbursement of expenses incurred prior to the Effective Date no later than forty (40) days after the Effective Date.

All Professional Persons seeking allowance by the Bankruptcy Court of a Fee Claim shall be paid in full in Cash in such amounts as are approved by the Bankruptcy Court: (i) upon the later of (x) the Effective Date, and (y) ten (10) calendar days after the date upon which the order relating to the allowance of any such Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such Fee Claim and the Reorganized Debtor.

### 3.3.    *U.S. Trustee Fees.*

The Reorganized Debtor shall pay all outstanding U.S. Trustee Fees relating to the Chapter 11 Case, in Cash, on an ongoing basis on the later of: (a) the Effective Date; and (b) the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the Chapter 11 Case or the Chapter 11 Case is converted or dismissed, or the Bankruptcy Court orders otherwise.

### 3.4.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to different treatment, each holder of an Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, regular installment payments in cash of a total value, as of the Effective Date, equal to the allowed amount of such claim over a period ending not later than five (5) years after the applicable Petition Date.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS

### 4.1.    *Classification of Claims.*

The following table designates the Classes of Claims against the Debtor, and specifies which Classes are: (i) impaired or unimpaired by this Plan; (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code; and (iii) deemed to accept or reject this Plan.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| | | | |
| 1 | Priority (Non-Tax) Claims | YES | YES |
| 2 | Secured Claims - Foundation Capital | YES | YES |
| 3 | Equipment Lessor - Advantage | NO | NO |
| 4 | General Unsecured Claims | YES | YES |

**4.2.**    *Unimpaired Classes of Claims.*

The following Classes of Claims are unimpaired and, therefore, deemed to have accepted this Plan and are not entitled to vote on this Plan under section 1126(f) of the Bankruptcy Code:

Class 3 – Advantage Leasing Corporation

This Claim has been assumed or will be assumed by the Reorganized Debtor as negotiated post-petition and the holder of the Claim will be paid in accordance with that agreement without any impairment.

**4.3.**    *Impaired Classes of Claims and Interests.*

The following Classes of Claims are impaired and the holders of Claims in such Classes are entitled to vote on this Plan:

(i)      Class 1: Priority (Non-Tax) Claims.

(ii)     Class 2:  Foundation Capital.

(iii)    Class 4:  General Unsecured Claims.

### ARTICLE V
### TREATMENT OF CLAIMS AND INTERESTS

**5.1.**    *Priority Non-Tax Claims.*

(a)      <u>Treatment</u>:  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to different treatment and after the date a Priority Non-Tax Claim becomes an Allowed Claim, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the Initial Distribution Date, the holder of such Allowed Priority Non-Tax Claim shall receive, on account of such Allowed Priority Non-Tax Claim, regular installment payments in cash of a total value, as of the Effective Date, equal to the allowed amount of such claim over a period ending not later than five (5) years after the applicable Petition Date.

(b)      <u>Voting</u>:  The Priority Non-Tax Claims are impaired Claims.  The Chapter 11 Trustee will solicit the affirmative vote of Priority Non-Tax Claims holders, however, the Chapter 11 Trustee believes that the terms provided herein for Priority Non-Tax Claims have been reached after arms-length negotiation and agreement.

**5.2.**    *Secured Claims – Foundation Capital.*

(a)      <u>Treatment</u>:  Foundation Capital shall have an Allowed Secured Claim in the principal sum of $2,275,000, which shall be secured by the FCR Collateral.  As of the Effective Date the FCR Allowed Claim shall bear interest at a rate per annum equal to six percent (6%).  The obligations of the Reorganized Debtor to Foundation Capital shall be represented by a

promissory note and related security documents, providing generally for monthly payments based upon a 30-year amortization, but with a maturity at the 60th month. The Allowed Secured Claim of Foundation Capital shall be secured by all of the Debtor's real property.

On the full payment or other satisfaction of the FCR Allowed Claim in accordance with the Plan, the Liens securing such Allowed Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(b)    Voting:  Foundation Capital is entitled to vote to accept or reject the Plan.  The Chapter 11 Trustee will solicit the affirmative vote of Foundation Capital; however, the Chapter 11 Trustee believes that the terms provided herein for Foundation Capital have been reached after arms-length negotiation and agreement.

**5.3.    *General Unsecured Claims.***

(a)    Treatment:    Each holder of an Allowed Unsecured Claim shall receive substantially equal Cash payments from the Reorganized Debtor on a quarterly basis for three years commencing January 15, 2016 and continuing until each such holder has been paid one hundred percent of its Claim without interest.

(b)    Voting: The holders of Allowed Unsecured Claims are impaired, and, subject to this Plan, are entitled to vote to accept or reject the Plan.

**ARTICLE VI**
**ACCEPTANCE OR REJECTION OF**
**THE PLAN; EFFECT OF REJECTION BY ONE**
**OR MORE CLASSES OF CLAIMS OR INTERESTS**

**6.1.    *Class Acceptance Requirement.***

A Class of Claims shall have accepted the Plan if it is accepted by at least two- thirds (2/3) in amount of the Allowed Claims in such Class and more than one-half (1/2) in number of holders of such Claims that have voted on the Plan.

**6.2.    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown."***

If one or more Classes of Claims or Interests vote to reject this Plan, the Debtor may request confirmation of this Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code. The Debtor reserve the rights to alter, amend, modify, revoke or withdraw this Plan or any Plan Document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**6.3.**    *Voting Classes; Deemed Acceptance by Non-Voting Classes.*

If a Class contains Claims eligible to vote and no holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the holders of such Claims in such Class.

**ARTICLE VII.**
**MEANS FOR IMPLEMENTATION**

**7.1.**    *Corporate Reorganization.*

(a)    With the assistance and cooperation of the Chapter 11 Trustee, the trustees of the Debtor have formed, or prior to the Effective Date will form, a new entity incorporated pursuant to the laws of the Commonwealth of Virginia as a non-stock, not-for-profit organization to resume generally the pre-petition mission and activities of the Debtor.  This new entity is, or will be, called The Richmond Christian Center, Inc. and is referred to herein as the Reorganized Debtor.  As of the Effective Date, the Reorganized Debtor shall be governed by the By Laws appended hereto as Exhibit A.

(b)    The Reorganized Debtor intends to operate as a Christian church under the Debtor's current tax exempt status and comply with any and all requirements and regulations for such entity to be an exempt, religious organization pursuant to I.R.S. Code section 501(c)(3).

**7.2.**    *Vesting of Assets.*

(a)    Except as otherwise provided herein, any and all property of the Debtor shall vest in the Reorganized Debtor free and clear of any liens, claims and/or interests as of the Effective Date.  As soon as practicable, the Debtor shall be wound up and its existence terminated. Notwithstanding the winding up of the Debtor or its termination, any and all intangible assets of the Debtor, including any causes of action or other claims against any Person shall survive and may be prosecuted, abandoned and/or settled by the Reorganized Debtor.

(b)    On the Effective Date, pursuant to sections 1141(b) of the Bankruptcy Code, the Assets shall vest in the Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other Interests, except as provided herein or in the Confirmation Order.

**7.3.**    *Corporate Action.*

The entry of the Confirmation Order shall constitute authorization for the Reorganized Debtor to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and the Plan Documents prior to, on and after the Effective Date and, except as expressly provided herein, all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including, among other things, (a) the adoption of new organizational documents for any Debtor, (b) the election and/or appointment of new officers and/or directors, (c) the termination and cancellation

of any outstanding instrument, document or agreement evidencing Claims or Interests in the Debtor, (d) all transfers of Assets that are to occur pursuant to the Plan, (e) the incurrence of all obligations contemplated by the Plan and the making of all Plan Distributions, as contemplated by the Plan, (f) the implementation of all settlements and compromises as set forth in or contemplated by the Plan, (g) entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation, (h) the winding-up and termination of the Debtor, and (i) any other action consistent with the terms of the Plan. To the extent that any matters provided for in or required by the Plan have been accomplished prior to the Confirmation Hearing, the Confirmation Order shall constitute a ratification of any such actions.

**7.4.    *Closing of the Debtor's Chapter 11 Case.***

When all Disputed Claims filed against a Debtor have become Allowed Claims or  have been Disallowed by Final Order or otherwise pursuant to this Plan, and any adversary proceeding has been resolved by litigation, settlement, or otherwise,  the Chapter 11 Trustee shall seek authority from the Bankruptcy Court to be discharged from and to close the Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VIII
## DISTRIBUTIONS

**8.1.    *Distributions.***

The  Reorganized Debtor will make the Plan Distributions to the appropriate holders of Allowed Claims in accordance with the terms of this Plan.

**8.2.    *No Postpetition Interest on Claims.***

Unless otherwise specifically provided for in the Confirmation Order or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

**8.3.    *Distribution Record Date.***

As of the close of business on the Distribution Record Date, the lists of holders of Claims as maintained by the Debtor shall be deemed closed and there shall be no further changes in the record holders of any of the Claims except to the extent a Claim is timely filed by a governmental unit (as defined in Bankruptcy Code section 101(27)) after the Distribution Record Date. Neither the Debtor, the Chapter 11 Trustee, nor the Reorganized Debtor shall have any obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date.

**8.4.**    *Delivery of Distribution.*

The Reorganized Debtor make all distributions or payments to any holder of an Allowed Claim as and when required by this Plan at: (i) the address of such holder on the books and records of the Debtor; or (ii) at the address in any written notice of address change delivered to the Debtor or the Chapter 11 Trustee, including any addresses included on any filed proofs of Claim or transfers of Claim filed pursuant to Bankruptcy Rule 3001. In the event that any distribution to any holder is returned as undeliverable, no distribution or payment to such holder shall be made unless and until the applicable the Reorganized Debtor has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter such distribution shall be made to such holder without interest, <u>provided, however,</u> such distributions or payments shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of one year from: (i) the Effective Date; and (ii) the date such holder's Claim is first Allowed.

**8.5.**    *Unclaimed Property.*

One year from the later of: (i) the Effective Date, and (ii) the date a Claim is first Allowed, all unclaimed property or interests in property shall revert to the Reorganized Debtor.

**8.6.**    *Satisfaction of Claims.*

Unless otherwise provided herein, any distributions and deliveries to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction and discharge of such Allowed Claims.

**8.7.**    *Manner of Payment Under Plan.*

Except as specifically provided herein, at the option of the applicable Trustee, any Cash payment to be made hereunder may be made by a check or wire transfer.or its successors may hold against the holder of such Allowed Claim after the Effective Date; <u>provided, however,</u> that (a) neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by a Post-Effective Date Entity or its successor, including the Trusts, of any and all claims, rights and Causes of Action that a Post- Effective Date Entity or its successor may possess against such holder, and (b) nothing contained herein shall permit any set off or recoupment against any Allowed Claims held by the IRS.

**ARTICLE IX**
**<u>PROCEDURES FOR RESOLVING CLAIMS</u>**

**9.1.**    *Objections to Claims.*

The Chapter 11 Trustee shall be entitled to object to Claims after the Effective Date. Any objections to Claims (other than Administrative Expense Claims), shall be served and filed on or before the later of: (i) one-hundred twenty (120) days after the Effective Date; and (ii) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in

clause (i) hereof. Any Claims filed after the Bar Date or Administrative Bar Date, as applicable, shall be deemed disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Chapter 11 Trustee, the Debtor or the Reorganized Debtor, unless the Person or entity wishing to file such untimely Claim has received prior Bankruptcy Court authority to do so.

**9.2.** *Amendment to Claims.*

From and after the Effective Date, except as otherwise provided herein, no Claim may be filed to increase or assert additional claims not reflected in an already filed Claim (or Claim scheduled, unless superseded by a filed Claim, on the applicable Debtor's Schedules of Assets and Liabilities filed in the Chapter 11 Case) asserted by such claimant and any such Claim shall be deemed disallowed and expunged in its entirety without further order of the Bankruptcy Court or any action being required on the part of the Chapter 11 Trustee, the Debtor or the Reorganized Debtor, unless the claimant has obtained prior Bankruptcy Court approval to file such amended or increased Claim.

**9.3.** *Disputed Claims*

Except as provided in this Section 9.3, Disputed Claims shall not be entitled to any plan distributions unless and until such Claims become Allowed Claims.  At the time of any distribution to any Claimant, the Reorganized Debtor shall create separate reserves for any Disputed Claims of the same Class in which a distribution is made in an amount equal to the Pro Rata Share of Plan Consideration which would have been distributed to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the asserted face amount of the Disputed Claim, (ii) the amount determined by the Bankruptcy Court, if any, that must be reserved for a Disputed Claim prior to any Distribution upon the request of the Trustee as permitted by Section 9.4 of this Plan, or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Chapter 11 Trustee or the Reorganized Debtor, or determined by the Bankruptcy Court after notice to the affected holder of a Disputed Claim and a hearing.  Within thirty days of entry of a Final Order allowing a previously Disputed Claim, the Reorganized Debtor shall make such payments to the Claimant such that its treatment is equal to others in the same Class.  To the extent any Disputed Claim has become Disallowed in full or in part (in accordance with the procedures set forth in the Plan) the Reorganized Debtor may refund to itself any reserve established for such Claims(s).

**9.4.** *Estimation of Claims.*

The Chapter 11 Trustee may request that the Bankruptcy Court estimate any Claim pursuant to section 502(c) of the Bankruptcy Code for purposes of determining the Allowed amount of such Claim for purposes of establishing any required reserves as provided in section 9.3 above.

# ARTICLE X
# EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.1.   *General Treatment.***

As of and subject to the occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court on prior notice to the affected counterparty, or agreed to by a the Chapter 11 Trustee and the counterparty to an executory contract or unexpired lease, all executory contracts and unexpired leases to which a Debtor is a party shall be deemed rejected, except for any executory contracts or unexpired leases that (a) previously have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, (b) are designated specifically or by category as a contract or lease to be assumed on the Schedule of Assumed Contracts and Leases, if any, or (c) are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date.

**10.2.   *Insurance Policies.***

All insurance policies pursuant to which the Debtor have any obligations in effect as of the Confirmation Date shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed and assigned to the Reorganized Debtor and shall continue in full force and effect. Nothing in this Plan shall be deemed to limit any insured from obtaining coverage under any of the Debtor's insurance policies.

**10.3.   *Post-Petition Contracts and Leases.***

All contracts, agreements and leases that were entered into by the Debtor after the Petition Date shall be deemed assigned by the Debtor to the Reorganized Debtor on the Effective Date.

# ARTICLE XI
# CONDITIONS PRECEDENT TO
# CONSUMMATION OF THE PLAN

**11.1.   *Conditions Precedent to Confirmation.***

Confirmation of this Plan is subject to entry of the Confirmation Order by the Bankruptcy Court in form and substance acceptable to the Chapter 11 Trustee, which shall not have been stayed by any court of competent jurisdiction.  The Confirmation Order shall contain findings consistent with this Plan and provide for the implementation of the provisions hereof.

**11.2.   *Conditions Precedent to the Effective Date*.**

The occurrence of the Effective Date is subject to:

(a)    the Confirmation Order having become a Final Order;

(b)    the Plan Documents being executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Chapter 11 Trustee that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith;

(c)    all material governmental, regulatory and third party approvals, authorizations, certifications, rulings, no-action letters, opinions, waivers and/or consents in connection with the Plan, if any, having been obtained and remaining in full force and effect; and

(d)    there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

**11.3.    *Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic Stay.***

(a)    The Chapter 11 Trustee shall have the right to waive the conditions precedent set forth in Sections 11.2 of this Plan at any time without leave of or notice to the Bankruptcy Court and without formal action other than proceeding with consummation of the Plan. Further, the stay of the Confirmation Order, pursuant to Bankruptcy Rule 3020(e), shall be deemed waived by the Confirmation Order.

(b)    If any condition precedent to the Effective Date is waived pursuant to this Section 11.3 and the Effective Date occurs, the waiver of such condition shall benefit from the "mootness doctrine," and the act of consummation of this Plan shall foreclose any ability to challenge this Plan in any court.

**11.4.    *Effect of Failure of Conditions.***

If all of the conditions to effectiveness and the occurrence of the Effective Date have not been satisfied or duly waived (as provided in Section 11.3 above) on or before the first Business Day that is more than 60 days after the Confirmation Date, or by such later date as set forth by the Chapter 11 Trustee in a notice filed with the Bankruptcy Court prior to the expiration of such period, then the Chapter 11 Trustee may file a motion to vacate the Confirmation Order before all of the conditions have been satisfied or duly waived. It is further provided that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if all of the conditions to consummation set forth in Section 11.2 hereof are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this Section 11.4, this Plan shall be null and void in all respects, the Confirmation Order shall be of no further force or effect, no distributions under this Plan shall be made, the Debtor and all holders of Claims shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and upon such occurrence, nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims against in the Debtor; (b) prejudice in any manner the rights of the holder of any Claim against the Debtor; or (c) constitute an admission, acknowledgment, offer or undertaking by any Debtor or any other entity with respect to any matter set forth in the Plan.

16

# ARTICLE XII
# EFFECT OF CONFIRMATION

### 12.1.  *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against the Debtor and inure to the benefit of and be binding on such holder's respective successors and assigns, whether or not the Claim of such holder is impaired under this Plan and whether or not such holder has accepted this Plan.

### 12.2.  *Injunction Against Interference With Plan.*

Upon the entry of the Confirmation Order, all holders of Claims and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

### 12.3.  *Exculpation.*

As of the Effective Date, the following parties, entities and individuals (in each case, solely in their capacity as such) shall have no liability for any postpetition act taken or omitted to be taken in connection with, or related to the Chapter 11 Case or formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other act taken or omitted, on or before the Effective Date, to be taken in connection with or in contemplation of the Chapter 11 Case of the Debtor (other than liability determined by a Final Order of a court of competent jurisdiction for actions or failure to act or disclose amounting to gross negligence, willful misconduct, intentional fraud or criminal conduct): (i) the church Trustees, (ii) the Debtor's attorneys and real estate agents (both sales agents and leasing agents), (iii) the Chapter 11 Trustee, and (iv) the Chapter 11 Trustee's attorneys and financial advisors provided, however, nothing in this Section 12.3 of the Plan shall be deemed (x) to release any act or omission that arose prior to the Petition Date or (y) to prejudice any pending claim or Claim Objection that might be pending concerning any such parties as of the Effective Date.

### 12.4.  *Retention of Causes of Action/Reservation of Rights.*

Nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims or Causes of Action, rights of setoff, or other legal or equitable defenses that the Debtor (or the Chapter 11 Trustee) had immediately prior to the Effective Date on behalf of the Estate or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and/or equitable rights respecting any Claim left unimpaired, may be

17

asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced. Among the rights retained and reserved shall be the right to conduct examinations pursuant to Rule 2004 of the Bankruptcy Rules, which rights are both retained by the Chapter 11 Trustee and transferred to the Reorganized Debtor upon the discharge of the Chapter 11 Trustee (provided the Chapter 11 Case has not been closed by entry of a Final Decree) and may be exercised by the such parties notwithstanding entry of the Confirmation Order and/or the occurrence of the Effective Date.

## ARTICLE XIII
## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in, arising under, or related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and any disputes resulting therefrom;

(b)     To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date, including, without limitation, issuing any order pursuant to Bankruptcy Rule 2004;

(c)     To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)     To consider the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

(e)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)     To issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)     To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)     To hear and determine all Fee Claims;

18

(i)      To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(j)      To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)      To take any action and issue such orders, including any such action or orders as may be necessary after occurrence of the Effective Date and/or consummation of the Plan, as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any exculpation, release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation;

(l)      To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)      To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n)      To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(o)      To recover all Assets of the Debtor and property of the Estates, wherever located;

(p)      To determine the appropriate amount to be reserved pursuant to Section 9.3 of this Plan, including a determination that a previously set reserve should be reduced; and

(q)      To enter a final decree closing the Chapter 11 Case.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

**14.1.    *Exemption from Certain Transfer Taxes.***

To the fullest extent permitted by applicable law, all vesting and transfer provisions provided for in this Plan and any assumption, assignment, and/or sale by the Debtor of their interests in unexpired leases of non-residential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code, and shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**14.2.    *Discharge of Chapter 11 Trustee.***

At the time prescribed in section 7.2 for the closing of the Case, the Chapter 11 Trustee shall file a final report and seek authority to be discharged.  Upon discharge of the Chapter 11

Trustee, the Reorganized Debtor shall be considered the Plan Proponent with any and all rights that such Plan Proponent may have concerning the implementation and/or modification of the Plan.

### 14.3.    *Termination of Professionals.*

On the Effective Date, the engagement of each Professional Person retained by the Debtor shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professional Persons shall be entitled to prosecute their respective Fee Claims and represent their respective constituents with respect to applications for payment of such Fee Claims and the Post-Effective Date Entities shall be responsible for the fees, costs and expenses associated with the prosecution of such Fee Claims. Nothing herein shall preclude the Reorganized Debtor from engaging a Professional Person on and after the Effective Date in the same capacity as such Professional Person was engaged prior to the Effective Date.

### 14.4.    *Amendments.*

(a)    Plan Modifications. This Plan may be amended, modified, or supplemented by the Debtor, with the consent of each Creditors Committee, which consent shall not be unreasonably withheld, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to this Plan, the Debtor may remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan, and any holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

(b)    Other Amendments. Prior to the Effective Date, the Chapter 11 Trustee may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court; provided, however, that, such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests under the Plan or the rights and responsibilities of the Reorganized Debtor.

### 14.5.    *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each remaining term and provision of this Plan is valid and enforceable pursuant to its terms.

**14.6.**  *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a Plan Document or exhibit or schedule to the Plan provide otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Virginia, without giving effect to the principles of conflict of laws thereof.

**14.7.**  *Section 1125(e) of the Bankruptcy Code.*

The Debtor have, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtor (and their affiliates, agents, directors, officers, employees, advisors, and attorneys) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of the securities offered and sold under this Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or offer, issuance, sale, or purchase of the securities offered and sold under this Plan.

**14.8.**  *Inconsistency.*

In the event of any inconsistency among the Plan, the Disclosure Statement, the Plan Documents, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

**14.9.**  *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**14.10.**  *Exhibits.*

All exhibits to this Plan are incorporated and are a part of this Plan as if set forth in full herein.

**14.11.**  *Notices.*

In order to be effective, all notices, requests, and demands to or upon the Debtor, the Chapter 11 Trustee and/or the Reorganized Debtor shall be in writing (including by facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered addressed as follows:

21

Chapter 11 Trustee
Attn: Bruce H. Matson, Esq.
LeClairRyan
P.O. Box 2499
Richmond, VA 23218-2249
bruce.matson@leclairryan.com

Richmond Christian Center
Rhonda Hickman
P.O. Box 27934
Richmond VA 23261

**14.12.** *Reservation of Rights.*

      Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to this Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtor with respect to any Claims or Interests prior to the Effective Date.

Dated:  July 13, 2015
Richmond, Virginia

                                    Respectfully submitted,
                                    BRUCE   H.   MATSON,   CHAPTER   11
                                    TRUSTEE

                                    /s/ Christopher L. Perkins
                                    Counsel

Christopher L. Perkins (VA Bar No. 41783)
Christian K. Vogel (VA Bar No. 75537)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
(804) 783-7550

*Counsel to Bruce H. Matson, Chapter 11 Trustee*

# **EXHIBIT A**

**(Proposed Bylaws of Richmond Christian Center, Inc.)**

# RICHMOND CHRISTIAN CENTER, INC
## BY-LAWS

The following By-laws is an amended and abridged revision of those adopted by the Trustees at a meeting in the city of Richmond, State of Virginia on the 28th day of May, 1999. These revised By-Laws shall govern the business of the Church except as the same may be from time to time abridged or amended.

## ARTICLE I

### NAME AND OFFICES

Section 1. Name. The name of this Church is Richmond Christian Center.

Section 2. Offices. The principal office of the Church shall be 214 Cowardin Avenue in the City of Richmond, State of Virginia. The Church may also have offices at such other places as the Board of Trustees may from time to time designate.

## ARTICLE II

### STATEMENT OF FAITH AND PURPOSES

Section 1. The programs and activities governing the form of worship of Richmond Christian Center, shall be based upon and at all times shall be consistent with the following creed and beliefs:

A.  THE SCRIPTURES. The Scriptures, both the Old and New Testaments, are verbally inspired of God, as they were moved by the Holy Spirit, and are the revelation of God to man, the infallible, authoritative rule of faith and conduct, we accept as our infallible guide in matters pertaining to conduct and doctrine (II Timothy 3:16, I Thessalonians. 2:13, II Peter 1:21)

B.  THE GODHEAD. Our God is One, but manifested in three persons the Father, the Son, and the Holy Spirit (Philippians 2:6; Matthews 3:16, 17).

God the Father is greater than all; the Source of the Word (Logos) and Begetter (John 16:28; John 1:14).

## RICHMOND CHRISTIAN CENTER, INC

## BY-LAWS

Jesus is the Son of God, One with the Father, the Word flesh covered, the One Begotten, and has existed with the Father from the beginning (John 1:1; John 1:18; John 1:14; John 10:30).

The Holy Spirit proceeds forth from both the Father and Son and is eternal (John 15:26).

C. MAN, HIS FALL AND REDEMPTION. Man is a created being, made in the likeness and image of God, but through Adam's transgression and fall, sin came into the world. "All have sinned and come short of the glory of God." "As it is written, there is none righteous, no not one." Jesus Christ, the Son of God, was manifested to undo the work of the devil and gave His life and shed His blood to redeem and restore man back to God (Romans 5:12; Romans 3:23; Romans 3:9, 10; I John 3:8; Galatians 3:13,14).

Salvation is the gift of God to man, separate from works and the law, and is made operative by grace through faith in Jesus Christ, producing works acceptable to God (Ephesians 2:8).

D. ETERNAL LIFE AND NEW BIRTH. Man's first step toward salvation is Godly sorrow that worketh repentance. The new birth is necessary to all men, and when fulfilled produces eternal life (II Corinthians. 7:10; I John 5:12, John 3:3-5).

E. WATER BAPTISM. Baptism in water is by immersion and is a direct commandment of our Lord, and is for believers only. The ordinance is a symbol of the Christian's identification with Christ in Colossians 2:12; Acts 8:36-39).

The following recommendation regarding the Water Baptismal formula is adopted, to wit:

"On the confession of your faith in the Lord Jesus Christ, the Son of God, and by His authority, I baptize you in the name of the Father, Son and of the Holy Ghost, in Jesus name, Amen."

F. BAPTISM IN THE HOLY GHOST. The Baptism in the Holy Ghost and Fire is a gift from God as promised by the Lord Jesus Christ to those who are believers in this dispensation and is received subsequent to the new birth. This experience is accompanied by the initial evidence of the speaking in other tongues as the Holy Spirit Himself gives utterance (Matthew 3:11; John 14:16-17; Acts 1:8; Acts 2:38-39; Acts 19:1-7; Acts 2:4).

G. SANCTIFICATION. The Bible teaches that without Holiness no man can see the Lord. We believe in the doctrine of sanctification as a definite, yet progressive work of grace, commencing at the time of regeneration and continuing until the consummation of salvation (Hebrews 12:14; I Thessalonians 5:23; II Peter 3:18; II Corinthians 3:18; Philippians 3:12-14; I Corinthians 1:30).

## RICHMOND CHRISTIAN CENTER, INC
## BY-LAWS

H. DIVINE HEALING. Healing is for the physical ills of the human body and is wrought by the power of God through a sovereign move of the Holy Spirit, the gifts of the spirit, the gift of faith, the prayer of faith, by laying on of hands and/or a combination of all. It is provided for in the atonement of Christ, and it is the privilege of every member of the church today (Mark 16:17, 18; James 5:14-20; I Peter 2:24, Matthew 8:17; Isaiah 53:4, 5; Acts 14:9; Matthew 9:29; ).

I. RESURRECTION OF THE JUST AND THE RETURN OF OUR LORD. The Angels said, "This same Jesus shall so come in like manner." His coming is imminent. When He comes, "The dead in Christ shall rise first; then we which are alive and remain shall be caught up together with them in the clouds, to meet the Lord in the air" (Acts 1:11; I Thessalonians 4:16-17).

Following the tribulation, He shall return to earth, as King of kings, and the Lord of lords and together with His Saints, who shall be kings and priests, He shall reign a thousand years (Revelation 20:6).

J. HELL AND ETERNAL RETRIBUTION. The one who physically dies in his sins without Christ is hopelessly and eternally lost in the lake of fire and therefore has no further opportunity for repentance. The lake of fire is literal. The terms "eternal" and "everlasting" used in describing the duration of the punishment of the damned in the lake of fire, carry the same thought and meaning of endless existence as used in noting the duration of joy and ecstasy of the saints in the presence of God (Hebrews 9:27, Revelation 19:20; Hebrews 6:1-2).

K. COMMUNION THE LORD'S SUPPER. We partake of the Lord's Supper to show the Lord's death till he come (I Corinthians. 11:23-31). The bread symbolizes the Lord's broken body (Isaiah 53:5; I Corinthians 11:24). The cup represents the New Covenant in His blood which provides us forgiveness and relationship with God (Hebrews. 9; I Corinthians11:25). We judge ourselves and realize that this is our salvation and receive it (I Corinthians. 11:28-30) for if we receive it unworthily-without giving it honor as our salvation-we are guilty of the body and blood of the Lord (I Corinthians. 11:27).

L. LAYING ON OF HANDS. A simple belief that power or anointing or any other necessary quality can be transmitted from one person touching another. Laying on of hands was practiced by the Levitical Priesthood. Jesus practiced it in Mark 10:13-16 as a blessing, and is our grounds for baby dedication instead of baptism. Laying on of Hands for Healing (Mark 5:22, 23, 41; Mark 5:28-31; Acts 28:8; Acts 19:11, 12); Laying on of Hands to confer office (Acts 6:2-6); Laying on of hands to receive the Holy Ghost (Acts 8:16-18); Laying on of Hands to believe words spoken, to receive anointing, and to cultivate the anointing (I Timothy 4:14); Laying on of Hands for Ordination to consecrate for ministry service (I Timothy 4:14).

# RICHMOND CHRISTIAN CENTER, INC
## BY-LAWS

M. SANCTITY OF MARRIAGE. Marriage is a sacred covenant, solemnized between a man and a woman, which establishes their relationship as husband and wife, and is the basis by which God has deemed mankind to procreate, multiply and have dominion here on the earth. (Genesis 1:26-30, Genesis 2:24)   The relationship between husband and wife is established and sanctified by Jesus Christ. As a sacred vocation, marriage mirrors the union of Christ and the church (Ephesians 5:23). This Church will not officiate or recognize any unions of parties of the same sex or other union falsely replicating marriage. (Genesis 2:24; Matthew 19:5; Mark 10:7 and Ephesians 5:31 -32).

Section 2. This Church shall be organized and operated exclusively for religious purposes within the meaning of Section 501 (c) (3) of the Internal Revenue Code of 1954, as amended, or any superseding section in order to:

1. Minister the Word of God;
2. Conduct a regular religious worship service through various forms of ministries;
3. Promote and encourage, through the ministries of the organization, cooperation with other organizations ministering within the community;
4. Spread the Word of the Gospel by ministering to all through seminars, radio, television, internet and other forms of mass and social media;
5. To conduct a local and international church by the direction of the Lord Jesus Christ and under the leadership of the Holy Spirit in accordance with all the provision as set forth in the Bible;
6. To maintain local and missionary church facilities;
7. To conduct a school for the training of ministers;
8. To license and ordain qualified individuals including graduates of the ministerial school; and
9. To provide Sunday school or any other type of school for the religious and educational instruction of the young, as well as for adults under the direction of the Church.

This Church is not organized, nor shall it operate, for pecuniary gain or profit, and it does not contemplate the distribution of gains, profits, or dividends to its members and is organized solely for non-profit purposes. The property, assets, profits and net income of this Church is irrevocably dedicated to charitable, educational and religious purposes and no part of the profits or net income of this Church shall ever inure to the benefit of or be distributable to its organizers, officers or other private persons, except that the Church shall be authorized and empowered to make payments and distributions (including reasonable compensation for services rendered to or for the Church) in furtherance of its purposes as set forth in these bylaws.

On the dissolution or winding up of this Church, its assets remaining after payment, or provision of payment of, all debts and liabilities of this Church shall be distributed to a non-profit fund, foundation or association that is organized and operated for charitable, educational, ecclesiastical, religious, or sacerdotal purposes and that has established its tax exempt status under Section 501 (c) (3) of Internal Revenue Code.

# RICHMOND CHRISTIAN CENTER, INC
## BY-LAWS

Section 3. To Acquire and Dispose.  In connection therewith, or incidental thereto the aforesaid purposes, duties, rights and responsibilities,  Richmond Christian Center shall have the right to purchase or acquire by gift, bequest or otherwise, either directly or as trustee, and to own, hold in trust, use, sell, convey, mortgage, lease, or otherwise dispose of any real estate or chattels as may be necessary for the furtherance of its purposes, and to exercise all other powers by the applicable nonprofit corporation law of the Commonwealth of Virginia; all in accordance with its bylaws as the same may be hereafter amended.

## ARTICLE III

(Worship) Spiritual Leadership

### PASTOR
Definition of Pastor.  The Pastor is the undershepherd, anointed, gifted and called of God, to minister to spiritual needs and to direct the activities of the Church in accordance with its Bylaws.  As such, he should be respected as the leader. In the event that he is elected to serve for an indefinite time, the Pastor should not presume that indefinite means permanent. The term "indefinite" merely means that the door is left open for unlimited ministry under the blessing of God, which can be terminated by the decision of the pastor or the Board of Trustees, with appropriate input from the congregation

Duties of Pastor.  The responsibilities of the Pastor shall include but not be limited to the following:  prayer and the ministry/study of the Word of God (Acts 6:1-15); provide spiritual oversight (1 Peter 5:2, 3); provide leadership by example (1 Timothy 3:1-16); teach and preach the Word of God, i.e., the pastor must demonstrate a strong theological understanding of the Word of God and the ability to rightly divide the Word of Truth (Acts 6:4, 1 Timothy 5:17-19); direct weekly worship services; pray for and visit the sick and afflicted (James 5); conflict resolution and mediation (Matthew 18:15-17; Acts 15:6); appoint leadership to assist with carrying out the vision (Acts 6:1-5, Titus 1:5, 2 Timothy 2:2); set the vision and submit goals/objections to the trustees (Habakkuk 2:2);  provide weekly updates to the trustees regarding the direction/decisions regarding the advancement of the ministry and the gospel (Ephesians 5:20,21).  Also if the pastor is also serving as the church administrator; s/he is responsible for the day to day operations of the church as directed by the trustees (1 Peter 5:2).

Appointment of Pastor.  Pastor (The Worship Leader) shall be appointed and approved by the Trustees following recommendations from a Search Committee which is a subcommittee of the Advisory Board.

### ASSISTANT PASTOR(S)
Definition of Assistant Pastor.  The Assistant Pastor is a fully ordained (see Article XIII) leader that helps the Senior Pastor lead the congregation in a growing and lasting relationship with the Lord Jesus Christ.  This individual has a demonstrated ability to teach/preach the Word of God, as well as, to lead and submit to the needs of the congregants.  Other key roles include the ability to substitute (stand in) for the Pastor if the pastor is absent and to affirm the vision of the church. The Assistant Pastor(s) shall be referred to as "Pastor".

# RICHMOND CHRISTIAN CENTER, INC
## BY-LAWS

Duties of Assistant Pastor(s).  In addition to the above, the Assistant Pastor will be responsible for heading up or taking active leadership in the oversight of a portion of the ministry.  This means that this individual will have active oversight of a portion, if not all, of the congregation. Current roles/duties of the Assistant Pastor include Church Administrator, Ministerial Liaison, Youth Pastor, Music Director, and Director of Christian Education.  Additional roles may be added as needed.

Appointment of Assistant Pastor.  The Assistant Pastor is appointed by the Pastor after approval by the Trustees.

## ECCLESIASTICAL GOVERNMENT

Section 1. The ecclesiastical and sacerdotal control and function of the organization shall be governed under the dictates of the Board of Trustees. It shall be the responsibility of the Board of Trustees to prepare guidelines with respect to the worship services of the Church, teaching the Gospel, and ministering to the congregation of Richmond Christian Center consistent with the Statement of Faith provided in ARTICLE II of these Bylaws.

Section 2.  The Board of Trustees may appoint a Pastor, Assistant Pastor(s), Associate Pastor(s), ministers, elders and deacons to administer said guidelines prepared by the Board of Trustees and to see that the ecclesiastical and sacerdotal functions of Richmond Christian Center, are properly and correctly carried forth. The duties of the elders and deacons shall be as set forth from time to time by the Board of Trustees. Said elders and deacons shall be nominated and/or elected on an annual basis.

Section 3. The Board of Trustees  shall establish a regular place of worship. It is understood that for a period of time said Church has conducted religious services and functions at 214 Cowardin Avenue in City of Richmond, State of Virginia.

Section 4. The Board of Trustees, elders and deacons shall establish Sunday Schools for religious instruction to the young and youth of Richmond Christian Center, and shall establish various guidelines for said religious instruction.

Section 5. Any and all ministers who lead and administer worship at Richmond Christian Center, shall minimally be graduates, or recognized as the equivalent therefore by the Board of Trustees, in good standing from said church, or other recognized Bible Training School, or have received proper preparation to its equivalent.

# RICHMOND CHRISTIAN CENTER, INC
# BY-LAWS

### ARTICLE IV
### MEETINGS AND MEETING OF MEMBERS

Section 1. Membership. Any person who subscribes to the Statement of Faith and who agrees to comply with all of the provisions of the Articles of Incorporation and By-laws (and any amendments thereto), may become a member of the congregation of *Richmond Christian Center.* Said members shall constitute the congregation of *Richmond Christian Center.*

### ARTICLE V
### TRUSTEES

Section 1. The number of Trustees shall be no less than three (3) and no more than five (5). Trustees must be residents of the State of Virginia and members of the Church. The Trustees, other than the first Board of Trustees, and except as provided in any Article of these By-laws, shall be elected at the regular meeting of the Board of Trustees, and each Trustee elected shall serve three (3) years and so far as may be until other or further election. The Board of Trustees shall be authorized to increase their number, ensuring that a quorum can be reached, by unanimous consent.

Section 2. Any vacancy occurring in the Board of Trustees may be filled by the affirmative vote of a quorum of the remaining Trustees. A Trustee elected to fill a vacancy shall be elected to serve the remaining portion of time. Upon the end of the vacated term, this position shall follow the normal election process set forth in the ByLaws. Any office of Trustee to be filled by reason of an increase in the number of Trustees shall be filled by election at an annual meeting or at a special meeting of Board of Trustees called for that purpose. A Trustee elected to fill a newly created trusteeship shall hold their office for three (3) years. This position is renewable indefinitely but is subject to review and approval by quorum by all trustees.

Section 3. The affairs of the Church shall be managed by its Board of Trustees which may exercise all such powers of the Church and do all such lawful acts and things as are not by statute or by the Articles of Incorporation or by these By-laws directed or required to be exercised.

Section 4. The trustee shall have financial management of the books of the Church and may keep the books of the Church, except such as required by law to be kept within the state, outside of the State of Virginia at such place or places as they may from time to time determine. The permanent location of the financial records will be at the principal office or the address of record. The church administrator and/or church secretary will ensure that all financial records remain secured at all times.

Section 5. The Board of Trustees, by the affirmative vote of a majority of the Trustees then in office, shall have the right for proper reimbursement of any approved expenditure made by

## RICHMOND CHRISTIAN CENTER, INC

## BY-LAWS

such Trustee on behalf of the Church.

## ARTICLE VI

### MEETINGS OF BOARD OF TRUSTEES

Section 1. Meetings of Board of Trustees, regular or special, may be held either within or without the State of *Virginia*. Any member may attend such meeting, unless such meeting held is considered an Executive Session. An Executive Session is any special meeting called by the Trustees to be held exclusively with members of the Trustee Board.

Section 2. Regular meetings of the Board of Trustees may be held upon such notice, or without notice, at such time and such time and such place as shall from time to time be determined by the Board.

Section 3. Special meetings of the Board of Trustees may be called by the President of the Board of Trustees on three days' notice to each Trustee, either personally, or by mail or by telegram; special meetings shall be called by the Secretary in like manner and on like notice on the written request of two (2) Trustees.

Section 4. Attendance of a Trustee at any meeting shall constitute a waiver of notice of such meeting, except where a Trustee attends for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at nor the purpose of any regular or special meeting of the Board of Trustees need be specified in the notice or waiver of notice of such meeting.

Section 5. A majority of Trustees shall constitute a quorum for the transaction of business unless a greater number is required by law or by the Articles of Incorporation. The action of the Board of Trustees must be done when a majority of the Trustees are present at any meeting at which a quorum is present, unless the action of a greater number is required by statutes or by Articles of Incorporation. If a quorum shall not be present at any meeting of Trustees, the Trustees present at such meeting may adjourn the meeting without notice, other than an announcement at the meeting, until a quorum shall be present.

Section 6. Any action required or permitted to be taken at a meeting of the Trustees may be taken without a meeting if a consent in writing, setting forth the actions taken, shall be signed by all of the trustees entitled to vote with respect to the subject matter thereof.

# RICHMOND CHRISTIAN CENTER, INC
## BY-LAWS

## ARTICLE VII

### ADVISORY BOARD

Section 1. Advisory board members will be responsible for promoting and advancing the image, purposes and objectives of the throughout the State of *Virginia and else whereas appropriate.* A majority objective in designating an advisory board member is to encourage prospective nominees for the Board of Trustees and others to become better informed concerning the programs and activities of the Church. Advisory board members will generally be expected to attend meetings of the Board of Trustees, but will serve in this capacity without vote or other formal authority over church affairs. The President of the Board of Trustees will be responsible for inviting advisory board members to attend Board of Trustees meetings, as well as for calling any of the meetings involving advisory board members.

Section 2. A maximum of seven (7) persons may be elected as advisory board members by action of the Board of Trustees. Each shall serve without compensation. Advisory board members shall be elected for two (2) year terms, ending on the date of the annual Board of Trustees meeting. Whenever a position is vacated prior to completion of the prescribed term, the vacancy may be filled by the Board of Trustees by an election of a qualified person to complete the unexpired term. An advisory board member may be elected to succeed himself without limitation as to the number of terms previously served. The advisory board shall not include any member who is a Pastor or an Assistant Pastor.

## ARTICLE VIII

### OFFICERS

Section 1. The Trustees may at any time deemed necessary establish officers of the Church. Such officers of the Church shall be members of the Church and shall be chosen by the Board of Trustees and shall be, as deemed necessary, a President, a Vice-President, a Secretary and Treasurer. The Board of Trustees may combine any offices except that of President and Treasurer. The Board of Trustees may also appoint one or more Vice-Presidents. The term of such officer shall be for a period of three (3) years. An officer may be elected to succeed himself without limitation as to the number of terms previously served.

Section 2. The Board of Trustees, at its meeting after its annual meeting of voting members, shall choose a President from among the Trustees, and shall choose a Vice- President, Secretary

# RICHMOND CHRISTIAN CENTER, INC

## BY-LAWS

and a Treasurer, and they must also be members of the Board of Trustees.

Section 3. The Board of Trustees may appoint such other officers and agents as it shall be deemed necessary. They shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Trustees.

Section 4. The salaries of all officers, other than Trustees of the Church shall be fixed by the Church Compensation Committee and approved by the Board of Trustees. Salaries of officers who are Trustees shall be set in accordance with Article IV, Section 5 of these By-laws.

Section 5. The officers of the Church shall hold office until their successors are chosen and qualified. Any officer elected or appointed by the Board of Trustees may be removed at any time by the affirmative vote of the majority of the Board of Trustees. Any vacancy occurring in any office of the church shall be filled by the Board of Trustees.

Section 6. President. The President shall be the Chief Executive Officer of the Church and, subject to the Board of Trustees, shall have general and direct supervision of the management and operation of the affairs of the Church, and shall perform such other duties as may from time to time be assigned to him by the Board of Trustees. The President shall preside at all meetings of the members and of the Board of Trustees.

He shall execute bonds, mortgages and other contracts requiring a seal under the seal of the Church, except where required or permitted by law to be otherwise signed and executed thereof shall be expressly delegated by the Board of Trustees to some other officer or agent of the Church.

Section 7. Vice-President. If appointed by the Board of Trustees, the Vice-President, or, if there shall be more than one, shall, in the absence or disability of the President, perform the duties and exercise the powers of the President and shall perform such other duties and have such other powers as the Board of Trustees may from time to time prescribe.

Section 8. The Secretary. The Secretary shall attend all meetings of the Board of Trustees and all meetings of the voting members; shall record all the proceedings of the meetings of the church and of the Board of Trustees in a book to be kept for the purpose and shall perform like duties for the standing committees when required. The Secretary shall give, or cause to be given, notice of all meetings of the members, Board of Trustees and Advisory Board and shall perform such other duties as may be prescribed by the Board of Trustees or the President under whose supervision the Secretary shall be. The Secretary shall have custody of the corporate seal of the Church and the Secretary shall have authority to affix the same to any instrument requiring it and, when so affixed, it may be attested by the Secretary's signature. The Board of Trustees may give general authority to any other officer to affix the seal of the Church and to attest the affixing of the Secretary's signature.

# RICHMOND CHRISTIAN CENTER, INC
## BY-LAWS

**Section 9. The Treasurer.** The Treasurer is accountable to the Church for disbursement of all funds received into the Church in a responsible and organized manner in accordance with the policies and procedures established by the Church and shall render to the President and the Board of Trustees at its regular meetings, or when the Board of Trustees so requires, an account of all the Treasurer's transactions as Treasurer and of financial condition of the Church.

A.      The Treasurer shall be responsible:

1. For the proper custody of Church funds and securities and insure that all  monies  and  other valuable effects are deposited in the name and to the credit of the Church in such depositories as may be designated by the Board of Trustees.
2. To development and annual financial budget to be presented to the Trustees  for approval and presented to the Congregation at the annual meeting;
3. To work according to the guidelines contained herein established by the Church;
4. To supervise the disbursement of all money contributed to the local Church budget, keeping accurate records of how money is spent;
5. To assure accurate monthly financial reports indicating the financial status of the Church;
6. To assure there are adequate records documenting the assets and liabilities of the Church for insurance and other purposes;
7. To make recommendations of the investment of funds;
8. To insure that all Church property is appropriately covered by insurance for property and casualty and general liability losses; and
9. To insure that all governmental taxes, reporting forms and regulations are met on a timely basis.
10. All books, documents pertaining to the operation of the church shall be securely kept in the church offices.  Keys, electronic devices, storage devices shall be duplicated, updated and given to the church secretary and made available to the bookkeeper.
11. Serve as a member of the church finance committee
12. Perform impromptu inspections of the money counting process and procedures while observing the money counting process.

B.      Check Signing Authority.  All checks or demands for money and notes up to $5,000 are to be approved by the President and signed by either the Church Administrator, President, Vice-President or Treasurer.  All checks or demands for money and notes in any amount above $5,000 are to be signed by BOTH the Treasurer AND the President, Trustees, designated to sign such checks, notes or authorize release or distribution of other demands for money.

C.      If required by the Board of Trustees, the Treasurer shall give the Church a bond in such sum and with such surety or sureties as shall be satisfactory to the Board of Trustees for the faithful performance of the duties of the Treasurer's office and, in the event of the Treasurer's death, resignation, retirement or removal from office, for the restoration  to the church of all books, papers, vouchers money and other property of whatever kind in the Treasurer's possession

## RICHMOND CHRISTIAN CENTER, INC
## BY-LAWS

or under the Treasurer's control belonging to the Church.

## ARTICLE IX

### INDEMNIFICATION OF TRUSTEES, OFFICERS AND EMPLOYEES

<u>Section 1.</u>    The Church shall indemnify any Trustees, officer or employee, or former Trustee, officer or employee of the Church, or any person who may have served at its request as Trustee, officer or employee of another church organization in which it owns shares of stock, or of which it is a creditor, against expenses actually and necessarily incurred by him in connection with the defense of any action, suit or proceeding in which he or she is made a party by reason of being or having been such Trustee, officer or employee, except in relation to matters as to which he shall be adjudged in such action, suit or proceeding of duty. The Church may also reimburse any Trustee, officer or employee the reasonable costs of settlement of any such action, suit or proceeding if it shall be found by a majority of a committee composed of the Trustees not involved in the interest of the Church that such settlement be made and that such Trustee, officer or employee was not guilty of negligence or misconduct. Such rights of indemnification and reimbursement shall not be deemed exclusive of any other right to which such Trustee, officer or employee may be entitled under any by-law agreement, vote of members or otherwise.

Trustees, from time to time, are authorized to purchase Director's Liabilities insurance as necessary to comply with the provisions and protections of Article IX.

## ARTICLE X

### CONTRACTS

Section 1.    The Board of Trustees, except as in these By-laws otherwise provide, may authorize any officer or agent to enter into any contract or execute and deliver any instrument in the name of and on behalf of the Church, and such authority may be general or confined to a specific instance; and unless so authorized by the Board of Trustees, no officer, agent or employee shall have any power of authority to bind the Church by any contract or engagement, or to  pledge its credit or render it liable peculiarly for any purpose or for any amount. All such authorizations of contract, engagements or pledge of credit shall be memorialized by Church resolution.

## ARTICLE XI

# RICHMOND CHRISTIAN CENTER, INC
## BY-LAWS

PROHIBITION AGAINST SHARING IN CORPORATE EARNINGS

Section 1. No member, Trustee, officer, employee, committee member or person connected with the Church, or any other private individual shall receive at any time any of the net earnings or pecuniary profit from the operations of the Church, provided that this shall not prevent the payment to any such person of such reasonable compensation for services rendered to or for the Church in effecting any of its purposes as shall be fixed by the Board of Trustees and/or the combined Board of Trustees and Advisory Board, and recommendations from the Compensations Committee; and no such person or persons shall be entitled to share in the distribution of any of the church assets upon the dissolution of the church. All members of the church shall be deemed to have expressly consented and agreed that upon such dissolution or winding up of the affairs of the church, whether voluntary or involuntary, the assets of the church, after all debts have been satisfied, then remaining in the hands of the Board of Trustees shall be distributed, transferred, conveyed, delivered and paid over, in such amounts as the Board of Trustees may determine or as may be determined by a court of competent jurisdiction upon application of the Board of Trustees, exclusively to charitable, religious, scientific, testing for public safety, literary or educational organizations which would then qualify under the provisions of Section 501 (c) (3) of the Internal Revenue Code and its Regulations as they now exist or as they may hereafter be amended.

## ARTICLE XII

EXEMPT ACTIVITIES

Section 1. Notwithstanding any other provision of these By-laws, no member, Trustee, officer, employee or representative of this church shall take any action or carry on any activity by or on behalf of the church not permitted to be taken or carried on by an organization exempt under Section 501 (c) (3) of the Internal Revenue Code and its Re gulations as they now exist or as they may hereafter be amended, or by an organization contributions to which are now deductible under 26 U.S. Code § 170 – Charitable, etc., Contributions and Gifts as they now exist or as they may here after be amended

## RICHMOND CHRISTIAN CENTER, INC

### BY-LAWS

**ARTICLE XIII**

LICENSING AND  ORDINATION  OF
MINISTERS

Section 1. The Church is authorized to establish  a prescribed Bible Training School and/or
cooperate with an established Bible Training School, so that individuals desiring licensing and
ordinations as ministers of Richmond Christian Center, shall successfully complete all criteria
and courses of study offered or recommended by Richmond Christian Center.

Section  2.     Upon  a minimum  of  successful  graduation  from  such  prescribed  courses  or
having  equivalent  preparations,  any  individual  wishing  to  apply  to  this church  as  a  minister
shall apply to the Board of Trustees. Upon approval, said individual shall then be an approved
minister  of  Richmond  Christian  Center  and  may  perform  any  and  all  ecclesiastical  and
sacerdotal  functions  of  the  church.    Such  approval  shall  be  based  on,  in  addition  to  the
aforementioned criteria, actual demonstrated experience as preparation for such office.   Such
functions  are:
   1. Baptisms,
   2. Weddings,
   3. Communion,
   4. Teaching,
   5. Spiritual Counseling,
   6. Baby Dedications,
   7. Funerals/Burials
   8. Administration of Church Affairs,
   9. Regular Conducting of Worship Services, and
   10. Music Ministry

The  licenses and/or ordination of ministers with  Richmond Christian Center shall  be subject
to  review  e v e r y  t w o  y e a r s  by  the  Board  of  Trustees. Any  offices  of  ministers
may  be  renewed  or  revoked  at  any  time  at  the  discretion  of  the  Board  of  Trustees,  if
said ministers are not  ministering and conforming to the religious tenets, faith, ethics, and
beliefs of the Church.

**ARTICLE XIV**

NOTICE

Section 1. Any  notice  to  voting  members,  Board  of  Trustees  or  offices  of  the  church
shall be in writing and shall be delivered personally or mailed to their respective
addresses  appearing  on  the  books  of  the  church.  Notice  by  e m a i l ,  t e x t ,  o r  mail  shall

# RICHMOND CHRISTIAN CENTER, INC

## BY-LAWS

be deemed to be given at the time when the same shall be deposited in the United States mail, postage prepaid.  It is the responsibility of the members to ensure that Church has the updated email, mobile number or mailing address.


Section 2.  Whenever any notice is required to be given under the provisions of the statutes or under the Articles of Incorporation or these By-laws, a waiver thereof in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.


## ARTICLE XVII

### FIRE ARMS

Firearms are prohibited on any campus of Richmond Christian Center unless a written authorization is on file at said location.

Code of Va. § 18.2-283 If any person carry any gun, pistol, bowie knife, dagger or other dangerous weapon, without good and sufficient reason, to a place of worship while a meeting for religious purposes is being held at such place he shall be guilty of a Class 4 misdemeanor.  The ruling also stated that churches, as private property, can ban or restrict such carry (which is consistent with Virginia law and would make for a trespass charge if violated).


## ARTICLE XVIII

### FISCAL  YEAR


Section 1. The fiscal year of the Church shall be finalized by resolution of the Board of Trustees, and shall be on a calendar year basis, ending December 31st of each year .


## ARTICLE XIX

### CORPORATE   SEAL


Section 1. The corporate seal, if used, shall be in such form as may be prescribed by the Board

## RICHMOND CHRISTIAN CENTER, INC

## BY-LAWS

of Trustees. The seal may be used by causing it or a facsimile thereof to be impressed or affixed or in any manner reproduced. To substitute the seal, the world, "ATTEST" over the signature of the secretary may be used.

## ARTICLE XX

## AMENDMENTS

Section 1.   These By-laws may only be amended or repealed at a Board of Trustees meeting duly called for the specific purpose of amending or repealing the same.

## CERTIFICATE

I, _____, Trustee and Corporate Secretary of Richmond Christian Center do hereby certify that the foregoing is a true, correct and complete copy of the By-laws of Richmond Christian Center on the day          of _____.

Secretary